## Miles H. Conrad v. John J. Smith and others.

*Highway commissioners: Discretion: Usurpation: Drain commissioners.* The authority of highway commissioners must find its limits in the nature of the trust confided to them, and in the kind and extent of duties imposed upon them; and while so long as they proceed regularly and keep within their allotted sphere they may exercise a reasonable discretion, yet they may not, under color of power to preserve, repair and improve a highway, go outside and usurp the powers and perform the duties properly allotted to drain commissioners.

*Highway commissioners: Authority to drain: Road purposes: Drain commissioners.* The power to ditch and drain for road purposes is very limited; and is restricted to highway needs and to works of comparatively little extent and expense, and such as are required upon public grounds and for the public benefit; and does not extend to any undertaking which could fairly be considered as a private and individual damage. There is a marked and clear distinction apparent in the statutes between the ground of authority of highway officers and that of drain officers in regard to ditching.

*Equity jurisprudence: Injunction: Highway commissioners: Drains.* The
    defendants in this case are enjoined from proceeding as highway commis-
    sioners to cut a ditch along the road-side in front of complainant's farm
    and dwelling, some forty-six rods long, from two to five feet deep, and
    of an average width of six feet at the top and of two feet at the bottom,
    where it is held the proofs do not serve to show the semblance of any
    need for it on account of the road, and do show that it will work irrepara-
    ble injury to complainant.—COOLEY, J., dissenting.
*Equity jurisprudence: Estoppel.* The complainant is held not estopped from
    complaining of the illegal and injurious conduct of defendants, by reason
    of his having bid at the public letting of the contract for cutting the
    ditch and of its having been struck off to him, when it is shown that he
    took this course to keep the work in abeyance for a little while until he
    could get time to file his bill for an injunction.

*Submitted on briefs June 17.    Decided October 19.*

Appeal in Chancery from Wayne Circuit.

*S. Larned* and *F. A. Baker*, for complainant.

*Henry M. Cheever*, for defendants.

GRAVES, CH. J:

Complainant filed this bill against defendants, who were
highway commissioners of Ecorse, in Wayne county, to re-
strain them from causing a ditch or drain to be dug on the
side of the highway upon the front of his land.

The court below heard the case on pleadings and proofs,
and dismissed the bill, and the complainant appealed.

An understanding of the case requires a reference to some
of the main facts, but a precise idea of the situation is not
attainable without a diagram.

Complainant owns an eighty acre lot in Ecorse, fronting
on a public highway situated on the line between Ecorse
and Monguagon, the lot being on the north side of the
highway, and the complainant's title going to the center.

On the southwest part of the lot, and extending across
the highway, and down to lands in Monguagon, there is a
tract of low, wet land, and which receives the surface water
from the surrounding high grounds, and holds more or less
water the greater portion of the year. The case calls this
the west swale.

On the southeast part of the lot is another and similar swale, which likewise crosses the highway.

Somewhere between fifty and a hundred rods south of the highway, and running nearly parallel with it, opposite complainant's front, as appears from a diagram, is a stream called Monguagon creek, or county ditch, and the last mentioned swale, which is known in the case as the east swale, discharges into it. The west swale bends round to the northeast, and the east swale to the northwest, so that far back on complainant's land they come near together in low water, and at high water the west swale vents a portion into the east swale at this point. In the wet seasons, and at other times of great and sudden rain-falls, the east swale is subject to overflow and to cover parts of complainant's land otherwise dry.

Complainant claims, and the weight of proof is that way, that formerly the west swale had a natural outlet at the southwest on William Otto's land, but that this outlet has latterly become obstructed in consequence of a wagon way made and used across it. The complainant occupies the lot in question. He has a house some distance back from the road, on the east side of the place, and not far from the east swale, and a barn a little farther back and more exposed to the overflow of the swale. The two swales, of which the east one is the lowest, are about forty-six rods apart along the road, and each has a small wood culvert or sluiceway over which the traveled bed of the road passes. Between these swales the land is high and dry.

The defendants being highway commissioners of Ecorse, ordered a ditch or drain to be cut from the west swale to the easterly one, about forty-six rods long. It was required to follow the complainant's side of the road, and to be cut within a few feet of his fence, and it was meant that it should have sufficient capacity to carry all the water which might accumulate in the west swale, along complainant's side of the road and into the east swale. The dimensions already fixed for this ditch or drain are not very precisely

given. But it may be gathered that it was expected to be from two to five feet deep, and of an average width at the top of six feet, and at the bottom of two.

The case shows distinctly that the project did not originate with the defendants, but was prompted in the first place by William Otto, who was much interested in getting the water of the west swale away from his land. He prepared a petition to the defendants, which was presented to them with several names to it he had procured.

The defendants now deny that their final action was based upon the petition, and, on the contrary, insist that in ordering the ditch or drain they had nothing in view except the improvement of the highway, and that they acted in the matter under the authority of § *1246, C. L.* They further allege that the job was regularly offered at public bidding; that complainant became a bidder, and being found the lowest, it was struck down to him; that he made no objection, but afterwards refused to enter into articles, and commenced this suit.

The explanation which complainant gives of his bidding is, that he wished to control and keep the work in abeyance until he could have time to file his bill, and that he resorted to a bidding to guard his rights and secure this very short delay.

The main ground of complainant's case is, that the defendants as highway commissioners, in assuming to order the ditch in question to be made, exceeded their power and acted without legal right, and that the acts threatened, if done, would involve a repetition of trespasses and irreparable injury.

The authority of highway commissioners must find its limits in the nature of the trust confided to them, and in the kind and extent of duties imposed upon them. This trust and these duties concern public ways, and relate, when such ways are once established, to their continuance, repair and improvement; and the commissioners are entitled to exercise a reasonable discretion, and without judicial inter-

ference, so long as they proceed regularly, and keep within the sphere allotted to them.

But they may not, under color of power to preserve, repair and improve a highway, go outside and enter upon any work they may think of general utility, and practically usurp the power and right pertaining to another public agency.

Their general powers and duties touching the care of roads and bridges are specified in *chapter 23, Comp. L.*

They are to have the care and superintendence of highways and bridges, and it is made their duty to give directions for repairing them.    They are to regulate roads already laid out, and cause highways and bridges over streams intersecting highways to be kept in repair.—§ *1192, Comp. L. Section 1214* points out the course required to be observed when particular repairs are needed on town-line roads and the highway work is insufficient.  And *section 1246,* which the defendants cite as that under which they assumed to act, directs the course to be pursued where the commissioners decide to use any portion over ten dollars of the moneys accruing to the township on account of non-resident highway taxes, in the repairing or construction of roads or. bridges.

Under and subject to these regulations, commissioners may provide for such ordinary highway ditches and culverts as the good of the road shall dictate; but they cannot lawfully depart from this object, which is the beginning and end of their authority, and, under color of ditching to improve a road, proceed to cut drains to promote the health of the neighborhood and improve the surrounding lands and increase their value.   The power to ditch and drain for road purposes is necessarily very limited, and its exertion is only authorized when the sole end of such exertion is the improvement of the road and the consequent benefit to the public; and the power, after being rightly set in motion in connection with an authorized object, cannot be lawfully carried beyond such object and into a domain which the law has assigned to another system and authority.   Where the nature

32 MICH.—55.

of the case, in view of the highway laws and their scope
and purpose, in view of the real power of the road officers
in the specific instance, marks the limit of the power of
such officers in regard to a specific work of draining, and
excludes their authority, and still, upon reasons of public
utility such as the drain laws recognize, there ought to be
some thing done, the end. is not to be attained by usur-
pation or abuse of power, but is to be sought through the
action of those appointed to administer the drain laws.
Under those laws the proceeding is guarded and regulated,
and nothing important is left to be dealt with in a very
summary manner by one, two or three persons, and all dam-
ages to individuals are provided for and the means are given
for collecting the same of those benefited.

In the case of mere highway ditches the whole matter is
summary and substantially of discretion, and no provision
is made for allowing damages, the law assuming that the
work is to be exclusively upon public grounds and for the
public benefit, and that nothing is authorized to be done
which could fairly be considered as a private and individual
damage.  The laws concerning drainage on sanitary reasons,
and the private advantage of land owners, do themselves
contemplate that highways may derive benefit from drains
authorized and made under those laws, and provision is
made for charging the township so much of the cost as the
highway is benefited.—§§ *1752, 1753, Comp. L.*    It is
also expressly enacted that drains may be made across and
along highways.—§ *1758, Comp. L.*    The legislative pur-
pose is well marked to show the distinction between the
ground of authority of highway officers and drain officers
in regard to ditching, and no one can fail to see that the
right of road officers to ditch is restricted to highway needs
and to works of comparatively little extent and expense.
The practical limitations upon expenditure do of themselves
show that the legislature meant to confine road officers to
small works.

Notwithstanding the claim of defendants that the projected

drain was meant to be a mere highway ditch, the facts do not bear them out. The case does not serve to show the semblance of need for it on account of the road. The ground between the two swales is admitted to be high and dry, and the facts, so far as disclosed, lead to an inference that the road is there good, and that it would continue so, unless affected injuriously by carrying a considerable artificial water-course along it, and which might saturate the ground, and, in times of high water, undermine or overflow it.

Neither do the facts contained in the record enable us to say that the road, where it passes the swales, would be improved any, or that the defendants had any basis whatever for supposing such would be the case. Then, again, the work in itself, as contemplated, is of unusual dimensions and cost for a country road-ditch, and would seem, in view of the situation, to be scarcely legitimate highway work.

In connection with these considerations it must be observed that the mind cannot avoid the impression, after an examination of the case, that the real motive was not to benefit the highway, but to help the surrounding lands, and that the power given to the defendants as highway officers was made a pretext for attempting what the laws governing such officers do not warrant.

I am therefore of opinion that the attempt was not lawful, and was liable to be enjoined. If in the situation itself there was a requirement for the execution of such or a similar work, it was not within the province of the highway commissioners, but in that of the drain officers. If correct in this, then the facts, as before intimated, make a case for equitable intervention. And the complainant was not estopped by the fact of his bidding, under the circumstances, from complaining of the illegal and injurious conduct of defendants.—*Fry on Spec. Per.*, 152; *Lindley on Part.*, 155; *N. Y. & Oswego M. R. R. Co. v. Van Horn*, 57 *N. Y.*, 473; *Shapley v. Abbott*, 42 *N. Y.*, 443.

They were proceeding improperly and illegally and by

rapid- steps, under a claim of official power, to do an act to his permanent injury.    They proposed an unlawful invasion of his land within the road limits, to commit a series of trespasses in the making and keeping up an artificial water-course there in order to drain the surrounding country. This water-course was to pass along the complainant's front, and between his place and the traveled part of the road, and there is reason to think that, besides other injuries, the construction of a water-course from the west to the east swale, unless the outlet of the latter were greatly enlarged, and which is a work the defendants would hardly have power to execute, would, in wet seasons, and at all times in case of heavy rain-falls, considerably swell the waters in the east swale, and induce a set-back upon his land to a much greater extent than has happened heretofore, and in that way cause him injury.    On the whole, the reason is strong for thinking that the work projected, if suffered to be carried out, would, in its consequences, do the complainant irreparable injury.

The law in support of the jurisdiction appears clear.— *Cooper v. Alden*, Har. Ch., *72; Brown v. Gardner*, Ib., *291; Ryan v. Brown*, 18 Mich., *196; Goodson v. Richardson*, L. R., 9 Ch. App., *221, 8 Eng., 835.*

I think the decree below should be reversed, and the relief prayed for granted, with costs of both courts to complainant, and that the cause should be remanded for further proceedings.

CAMPBELL and MARSTON, JJ., concurred.

COOLEY, J:

This is a bill filed to restrain the highway commissioners of the township of Monguagon from digging a ditch along the highway in front of complainant's land.    The ground assigned for the relief is, that the ditch will cause water to flow upon his lands and do irreparable injury to him.    The defendants deny that this will be the result of digging the

ditch, and show its necessity to the improvement of the highway. The circuit judge heard the case on testimony taken in open court, and came to the conclusion that the complaint was not well founded. Reading the testimony as it is returned in writing to this court, I agree with the circuit judge in his conclusion. But if I were in doubt on this point, I should still think the decree ought to be affirmed because the opportunity of the circuit judge to decide correctly upon the facts, when he has the advantage of having all the witnesses before him, is much superior to ours. We have repeatedly acted upon the principle that in such cases all doubts should be solved in favor of the action of the court below.

But there is a further reason why in this case the same course should be taken. These defendants are public officers, acting within their undoubted jurisdiction, and entitled to the presumption that they are acting honestly, and according to their best judgment. While they are doing so, it is their judgment that must govern, and not ours, because the law commits the improvement of highways to them, and not to us. It ought also to govern because they can inspect the premises, and with full knowledge of the facts judge of consequences of their action, while we can only reach the facts by means of the imperfect and conflicting statements of parties and witnesses. If real injury results it can better and more safely be redressed at the hands of a jury of the vicinity, than in the court of chancery. Courts neither ought to nor can sit in review of the judgments of highway officers, and the law does not intend that they shall. To stop the improvement of a public highway on the ground of irreparable injury, in a case so doubtful as this, seems to me a dangerous, or at least a mischievous, assumption of authority; especially as a simpler remedy is open to the party by means of which he may recover his damages, while not interfering with the public improvement.