THE PEOPLE v. HERMAN FOSS.

*Criminal law—Assault and battery—Highways—Rights of adjoining land-owner.*

It may not be desirable that grass should grow and be harvested in the wrought portion of a country highway, but when the travel has been in a uniform and beaten track, leaving grass to grow and ripen undisturbed upon either side, no one but the abutting land-owner, who owns the fee, has the right to harvest it; and he can not only maintain trespass or trover against any person cutting and taking it away against his will, but he has the right to *protect it* against *wanton* or *malicious* damage or destruction, whether attempted under the guise of travel upon the highway or in some other way.

Exceptions before judgment from St. Clair. (Canfield, J.) Argued May 1, 1890. Decided May 9, 1890.

Respondent was convicted in justice's court of assault and battery, and in the circuit court on appeal. Conviction reversed, and new trial ordered. The facts are stated in the opinion.

*Avery, Jenks & Avery,* for respondent, contended for the doctrine stated in the opinion.

*B. W. Huston,* Attorney General, for the people.

*S. L. Merriam,* Prosecuting Attorney, for the people, contended:

1. The court correctly stated the law to the jury; citing *Daniels v. Clegg,* 28 Mich. 36; *Pigott v. Engle,* 60 Id. 228; *Macomber v. Nichols,* 34 Id. 216; *Stinson v. City of Gardiner,* 42 Me. 248; *Railroad Co. v Munger,* 5 Denio, 255.

MORSE, J. Defendant was convicted of assault and battery upon one August Stieman in justice's court. Upon appeal to the circuit court for the county of St.

Clair, he was again convicted by the verdict of a jury. He brings his case to this Court upon exceptions before judgment.

The place of the alleged assault was in a public highway, and, as the defendant claims, upon that portion of the same within the half adjoining his father's lands. The farm of the complainant lies opposite his father's, and on the other side of this highway. There is a ditch running close to the fence on defendant's father's side of the road. Between this ditch and the usually traveled track of the highway there was a strip of grass land, from a rod to a rod and a half in width, extending the whole length of the father's premises. Grass had grown there many years, and, when in condition, had been cut, sometimes by defendant and his father, and occasionally by Stieman. There had been more or less controversy about this grass, which finally culminated in the affray causing this suit.

The defendant lived with his father. On June 15, 1889, Stieman was drawing rails from his fence, on the south side of the road, to his orchard, using the highway for that purpose. He was drawing the rails upon a crotch between three and four feet wide. Stieman, after loading, drove on the north side of the center of the road, outside of the beaten or traveled track, and upon the grass. Defendant was mowing. Stieman claims that he told defendant to get out of the way. The elder Foss was there with a bushel basket and rake, gathering the cut grass into the basket. They acted as if they did not hear Stieman, and he—

" Told his horses to get up, and the boy then went on the north side of the road, and the old man stood on the south side of the road;　*　*　*　and as I went by the boy cut my horse on the back side with the scythe with which he had been mowing."

They had some hard words, and Stieman testifies that, as he was driving on, the defendant came up behind him, and struck him twice on the neck. Stieman was corroborated in his testimony by his son. Defendant testified that Stieman came across the road and drove his team upon him; that he threw his scythe into the fence corner, and shoved the horses back with his hands. Stieman dropped his lines "and hauled off," and said:

"'I will kill you.' When I see he was going to hit me, I pushed him back. I gave him two pushes,—one after the other; and, when he see I was pushing him, he went straight across the road and got a scythe, and came up to me, and hauled off three times, and says: 'I cut you in two.'"

Defendant stepped back out of his way, and finally Stieman went away, with threats of future hurt to defendant. Defendant was supported in his testimony by the evidence of his father. The record also states that other witnesses were produced by the prosecution who gave testimony in corroboration of the facts testified to by Stieman and his son; and the defendant produced other witnesses who gave evidence in corroboration of the facts sworn to by himself and his father.

The excuse of Stieman for driving on the grass was that the road was muddy. He admitted that there was grass on his own side, but claimed that it was not wide enough to drive on. The testimony on the part of the defendant* showed that the road was sandy, and, although it had rained two days before, the road was not muddy. The beaten track was somewhat nearer Stieman's fence than it was that of Foss; but it is clear that Stieman drove over on the grass for the express purpose of damaging it, as there was room between the beaten track and the uncut grass to drive upon the sward where the grass had been cut. It is also evident from the record that there

80 MICH—36.

was bad blood between the parties, growing out of their rights in the highway as claimed by each. It was claimed by Stieman that Foss had pastured his cattle in the road, and that he had forbid it, because they trespassed upon his side of the highway, but that he did not quarrel with Foss about the grass on Foss' side of the road. He admitted, however, that he cut it one year, and pastured it another. Foss and his son testified that Stieman told them that, if they would let him have one swath on their side of the road, he would make them no trouble, and that, when he drove upon the grass, he also purposely stamped it down with his feet.

The defendant's counsel requested that the following instruction be given to the jury, which was refused:

"That the defendant had a legal right to cut the grass on his side of the highway; that the grass there growing belonged to him,—as much so as the grass growing on any other part of his farm,—and, for the purpose of harvesting the grass so growing on his side of the highway, he had a right to be there, in person, for that purpose, either of his own right or as the servant of his father, who appears to be the owner of the land, so long as he did not interfere with the free and ordinary use of the highway for public travel."

And also that defendant had a right to protect the grass, and, in so protecting it from being run over and destroyed by Stieman, he would be justified in using as much force as would be necessary to keep Stieman from destroying it; and, if the jury found that no more force was used than was necessary to protect it, their verdict should be for the defendant. The court was also asked to charge, in substance, that Stieman was a trespasser on that side of the highway, and liable to be put off by the defendant, if no more force was used than was necessary to protect the grass, unless the jury found that it was necessary for Stieman to drive there in order to have the free and customary use of the highway for public travel.

The circuit judge refused to so charge, and instructed the jury that, as to the question of the right of Stieman to travel where he did in the highway, as a matter of law, a person had a right to travel where he pleased upon any part of the wrought portion of the highway; that it was usual to dig ditches on each side, and throw the earth taken from that, and construct a road-bed, and that the travel is usually between these ditches; and that any person, in traveling along the highway about his business, has the right, absolutely, to go where he pleases, so long as he does not interfere with other persons traveling on the highway.

"I think the public, or any one of the public, has the right to go wherever their judgment might dictate, or their caprice may lead them to go; that, because it happens that the beaten track is in a certain locality, it need not always remain just there, and we know, as a matter of fact, it changes according to the caprice of the public or circumstances, of which I might enumerate many, and one person has a right to commence to change that track as well as another. There may be reasons why a person may desire to go upon grass ground instead of the beaten track; and, whatever the reason may be, I instruct you, as a matter of law, that a person has a right to go where he chooses along that wrought portion of the road. And, if it is a fact that the defendant in this case made an assault upon Mr. Stieman because he persisted in exercising that right, and in driving upon the grass, and struck him, then he is guilty of assault and battery as charged in the complaint."

The point in controversy is thus sharply defined by defendant's requests and the charge of the court above stated. It seems to me a novel and interesting question. It is undisputed that Stieman was driving upon growing grass within the wrought portion of the highway, but outside of the beaten or customary track of wagons, and within that portion of the highway the fee of which was in defendant's father. The defendant was under age, and

working for his father. The father had the right to this grass not only as against Stieman, but all the world, unless it was necessary to destroy it for the needs of public travel. If Stieman had cut the grass and carried it away, Foss could have sued him in trespass for so doing, or recovered from him in trover the value of the grass thus converted. This is certain, within all the authorities. The fee of the land was in Foss, subject only to the easement of the public to use it for the purpose of a highway. He had the right to use it, and to enjoy the profits of it, in any way not incompatible with the public enjoyment of the right of way. *Woodruff v. Neal*, 28 Conn. 169; *Suffield v. Hathaway*, 44 Id. 521, 527; *Stackpole v. Healy*, 16 Mass. 33; Cooley, Torts, 318; *Holladay v. Marsh*, 3 Wend. 142; *Campau v. Konan*, 39 Mich. 362, 365; *Adams v. Emerson*, 6 Pick. 57; *Clark v. Dasso*, 34 Mich. 86; *People v. O'Brien*, 60 Id. 8, 13; *Elsworth v. Lord*, 40 Minn. 337; *Wolf v. Holton*, 61 Mich. 550, 553; Washb. Easem. (4th ed.) 10; *Coburn v. Ames*, 52 Cal. 385. It is plain enough from this record that the complaining witness, Stieman, drove where he did without necessity, and for the express purpose of destroying the grass.

The question arises whether he had the right, from mere caprice or express malice, to destroy this grass by driving upon it, and stamping it under his own and his horses' feet, because it happened to be between the two ditches, and in a space usually known as the wrought or traveled part of the road, when he would have no right to go and cut and carry it away for his own use. I think not. If the jury had found that Stieman drove on this grass, when it was not necessary, for the purpose of damaging or destroying it, and that all the defendant did was to push the horses off from it, and, when attacked by Stieman for this, did no more than was necessary in order to push him away from him, it would have been

their duty to have acquitted him. It may not be desirable that grass should grow and be harvested in the wrought portion of the highway, but when, upon a rural or country road, the travel has been in a uniform beaten track, leaving grass to grow and ripen undisturbed upon the sides of such track, no one but the abutting landowner, who owns the fee, has the right to harvest it; and he can not only maintain trespass or trover against any person cutting and taking it away against his will, but he has the right to protect it against wanton or malicious damage or destruction, whether it is attempted to be done under the guise of travel upon the highway or in some other way. In this case the complaining witness could not have destroyed this grass by turning his cattle upon it to pasture it. Neither, in my opinion, could he drive his horses and wagon upon it to trample it under foot, when it was not at all necessary to do so, and while he knew Foss and his son were at work gathering it. The law does not permit or encourage any "dog in the manger" business of this kind.

In *Phifer v. Cox*, 21 Ohio St. 248, the plaintiff brought an action to recover damages for the destruction of a hedge within the limits of a highway. The court held that, so long as the enjoyment of a right of way was unobstructed, there was no reason why the easement of a highway should afford a justification to an individual for the needless destruction of property belonging to the owner of the land merely because it happened to be within the bounds of the road as laid and established. And in *People's Ice Co. v. The Excelsior*, 44 Mich. 233, Judge MARSTON says:

" Ordinarily, it may be said that the entire width of the highway may be used; yet the owner of the land over which it passes may, within the limits thereof, plant trees, set posts, and do such other acts as will add to his con-

venience or assist in beautifying his premises. He is encouraged in doing this by public sentiment. * * * Public convenience may in time, in particular locations, require the removal of some of these things; and, whenever the necessity arises, and the public authorities request their removal, then the private must give way to the public or paramount right. But, while permitted to remain, no one traveling the highway could willfully injure or destroy them; and, should any one do so, he would justly be held responsible, notwithstanding his plea of a claim of right to travel over any part of the highway."

And at page 234, speaking of the relative rights of the steamer and the riparian proprietor, he says:

"The right of navigation, while paramount, is not exclusive, and cannot be exercised to the unnecessary or wanton destruction of private rights or property, where both can be freely and fairly enjoyed."

So, in this case, while the right of travel upon the highway was paramount, Stieman could not exercise that right, in caprice or wantonly, to destroy the property— the grass,—without any necessity, of Foss, and where both the right of travel and the harvesting and preservation of this grass could be freely and fairly enjoyed.

The circuit court was in error; and the verdict of the jury must be set aside, and a new trial granted the defendant.

The other Justices concurred.