## THE PEOPLE v. SIDNEY SAYERS.

*Assault—Justification.*

In a prosecution for an assault alleged to have been made upon one of several men who were at the time taking up a drain, it appeared that the work was being done under the direction of the highway commissioner; that the respondent, upon his arrival, asked by whose authority the work was being done; that the commissioner replied that it was being done by his authority; and thereupon the respondent made the demonstration claimed to have amounted to an assault towards said employé, as the supposed instigator of the work. And it is held that the court did not err in instructing the jury that the evidence failed to show that said demonstration was made to prevent the taking up of the drain.

Exceptions before judgment from Tuscola. (Beach, J.) Argued May 7, 1895. Decided July 2, 1895.

Respondent was convicted of an assault. Conviction affirmed. The facts are stated in the opinions. .

*S. B. Gaskill,* for respondent.

*Fred A. Maynard,* Attorney General, and *T. W. Atwood,* Prosecuting Attorney, for the people.

GRANT, J. I think the conviction in this case should be sustained. The question whether the demonstration made by respondent towards Griffin amounted to an assault was left to the jury under a clear and fair charge. Respondent denied that he made an assault. If his version was true, he should have been acquitted. If the people's version was true, he was properly convicted, unless the assault was justifiable. The court said to the jury:

"There is no evidence to indicate that Mr. Sayers, in

making whatever demonstrations he did make, was undertaking to prevent the parties who were there, either Mr. Griffin or any one else, from taking up the tile or drain, but that, on the contrary, from his language, it indicated that he looked to Griffin as the author of the trouble, and that the demonstrations were not made for the purpose of preventing the taking up of the drain; and consequently the theory of the effort to prevent its being taken up, under the evidence, falls to the ground."

If the evidence sustains this instruction, the conviction was correct. The work was being done under the direction of Mr. Connor, the highway commissioner. He had procured several men to assist him, including Mr. Griffin. According to the testimony of all the witnesses, Mr. Sayers, upon his arrival, jumped out of his cutter, and asked by whose authority the work was being done. Connor replied that it was by his authority, and Sayers then made the demonstration towards Griffin, as the supposed instigator of the work. Sayers' story is as folows:

"When I got to the sluice I asked by whose authority that was being taken up. Mr. Connor answered, by his. I said, 'I forbid your taking that up,' and the men stopped, and he said, 'Take it up,' and they took it up. I said, 'If you take it up, I will prosecute you,' and he says, 'Tear it up, any way to get it out, and smash it,' and I says, 'If you smash it, you'll pay for it.' I said to Griffin: 'Here is the ——— that is to blame for this being taken up. I ought to make a corpse for a Patron funeral.' At the same time I used a gamble to point out the natural water-course as it ran in a state of nature. I told Griffin the water ran down on the west side of the road, and across his orchard, and I told him, if he would ditch his own farm, and leave mine alone, he would be better off. I told Griffin to mind his own business, and leave mine alone. Connor put his hand on my shoulder, and said: 'Sayers, let my men alone. I want them to work.' And I stopped, and went away home."

I think the record contains no evidence to show that the demonstration made by Mr. Sayers towards Mr. Griffin was made for the purpose of preventing the taking up of the drain, and that, therefore, the instruction was cor-

rect. Griffin was present in the capacity of a hired man. He had no control over the work. Sayers recognized the authority of Connor, and made no demonstration towards him, nor towards Griffin until Connor had directed the work to proceed. He did nothing to prevent the accomplishment of the work, except to warn Connor not to do it.

Conviction affirmed.

HOOKER and MONTGOMERY, JJ., concurred with GRANT, J.

McGRATH, C. J. (*dissenting*). Respondent was convicted of an assault upon one Griffin. Sayers owned lands on both sides of the highway, and had constructed a culvert across the highway to carry the water from the east to the west side. Griffin owned lands immediately north of those of respondent, the southerly line of which was some 10 or 12 rods north of the culvert. The testimony was undisputed that the culvert was in the line of the natural course of the water; that an attempt had been made to carry the water along the east side of the highway, but the ditch had not been sufficient, and the water backed up upon respondent's lands; that respondent had previously complained to the highway commissioner, had stated that he intended to make the culvert, and had asked the commissioner to make provision for carrying the water in its natural course along the west side of the highway, and then westerly; that the fall from the east to the west side of the road is 14 inches; that the natural course of the water is north-westerly, and at a point 12 rods north-westerly from the culvert at Griffin's line fence there is a fall of $4\frac{1}{2}$ feet; that when respondent bought his farm, some 20 years before, there was a culvert across the road; that respondent had attempted to carry the water along the east side of the highway, and for that purpose had constructed the ditch on that side of the highway; that the ditch did not serve the purpose; that the old culvert had been taken up in 1879 or 1880. At

the time of the alleged assault the highway commissioner, with Griffin and others, was engaged in tearing out the culvert. It appeared from the testimony of the commissioner that he acted at the instigation of Griffin. The commissioner testified:

"While engaged in the work, respondent came up. He had a gamble stick in his hand. He stepped up to where we were taking up the ditch, and says: 'By whose authority is this being taken up?' And at that time I don't think he saw me. I turned to him, and told him it was by my authority. He said to Dorrity [one of the others engaged in the work], 'You are interested in this business, are you?' And Dorrity said, 'No.' He then turned to Griffin, and said to him: 'You are the son of a ———— that is the cause of this,—of having this commissioner brought down here,—are you?' And he jumped and sprang, with this stick—this hog gamble—in his hand, and says: '—— your —— soul! I will make a Patron corpse of you right here.' Griffin backed up to the other side of the ditch, and Sayers followed him, and swung his club. I slapped Sayers on the shoulder, and told him to stop,—that all the men were working under my instructions. He said to me, as he said before, that Griffin was the cause of my being there. * * * When I told Sayers to stop, he stopped. Sayers came close to Griffin. He did considerable flourishing with the club. I was not a bit frightened. I did not think he was going to strike Griffin. He did not strike at him. He was so close to him that he could put his hand on him. He might have been talking about water-courses. He said something about water-courses. He told Griffin that if he would drain his own farm he would not have any trouble; 'Drain as I do.' He was talking about the drainage all of the time, with this club over his head. This water had not done any damage to the road yet. * * * I went to see it, and discovered that Sayers had dug across the highway between his two farms, and let the water across to the west side, and had dug down the west side, I should think, six or seven rods, and left a ditch, and stopped on the west side of the road. He had dug across the highway, and thence north to the quarter line, to Griffin's land. The effect it had upon the water that passed down the ditch was that it took it across the road, to the

west side. There was no provision on the west side, as I saw, for carrying the water in the ditch there. There was provision made on the east side of the road, from Sayers' corners down to Allen's corners, on the township line. The ditch is four or five feet deep and five or six wide. It was cleaned out last spring. Sayers' turning the water into the west side of the highway resulted in an injury to the highway. There was no provision to take the water away, and by having the sluice; and there was no need of it, and that would be an injury to construct a sluice across the highway when there was no need of it. I saw no necessity for the sluice. I saw no provision for carrying the water away to the north.     *     *     * Sayers did not show me where he was taking the water to. The water was running under the highway at that time. There was not much water,—not enough to affect Griffin's land. There was no ditch on the west side of the road. I think the water was running in a north-west direction across Griffin's farm. There was a small ditch that would carry part of it. The banks were graded there. I did not examine it. I examined the west side of the road till there was no provision for it to run. I did not look further. At some time it might be a damage to the highway, if the sluice got stopped up, and the water would naturally wash the highway, and the planks would get rotten."

Griffin testified that—

"He said that he would smash me and chuck me in the ditch. He came at me as though he intended to carry out the threat. He said a good deal, but I was more interested in his actions than in his words, so I don't remember what he said. When he came at me as though he was going to strike me, I raised my spade to ward off the blow if he should strike. I backed up, and he followed me until the commissioner told him to stop."

John Dorrity says:

"Mr. Sayers said to Connor that he forbade him taking up that sluice unless he gave him an outlet on the east side of the road. Connor said he would make an outlet when he got to it. Sayers said he wanted it immediately."

Charles Dorrity says:

"Sayers says to Griffin, 'I ought to smash your head, and I can do it.' Sayers did not strike at him."

Defendant's counsel presented the following requests, which were refused:

"That it is the natural servitude the lower land-owner owes to the upper land-owner to receive the natural flow of water, and he is bound by law to do so.

"That the defendant had a proprietary right of ownership to the water upon his land, and being the owner of the soil in the road, as well as upon each side of the road, he had a right to conduct this water in a drain under the road, if he did it in a manner so as not to interfere with the rights of the public, or to the damage of the highway.

"That this is a fact for the jury to determine,—whether this drain was an injury to the highway.

"That the power of the highway officers is confined entirely to draining and improving the highway, and they have no right to construct drains for the improvement or protection of private lands.

"If the jury believe the fact to be that the highway commissioner and Griffin were tearing up this drain because the water thereupon would flow upon and damage Griffin's land, then they would not be protected by the law."

The court instructed the jury as follows:

"Now, a great deal of testimony has been put into the case under the theory that there was some justification if an actual assault was committed, or, whatever demonstration was there made, there were circumstances which justified it,—all on the theory that the defendant had been undertaking to conduct his water lawfully across the highway in the direction which he did, and that whatever he did on that occasion on that day was to prevent a trespass. My own judgment of the evidence here, as we have it, is that these facts have no particular or material bearing upon the question at issue here, for the reason that none of the witnesses can give any evidence which indicates that Mr. Sayers, when he was making the demonstrations,—whatever demonstrations he did make, —was undertaking to prevent the parties who were there, either Mr. Griffin or any one else, from taking up the tile or drain, but that, on the contrary, from his language, it

indicated that he looked to Griffin as the author of the trouble, and that the demonstrations were not made for the purpose of preventing the taking up of the drain, and consequently the theory of the effort to prevent the taking up of the drain, under the evidence, falls to the ground. There seems to be no warrant in the evidence, or under the evidence, for that theory; and while the evidence may explain Mr. Sayers' right to be there, and his interest in the drain, and his objections to its being taken up, yet, as I say, the evidence does not disclose that whatever demonstrations he made towards Mr. Griffin had the end in view of preventing the drain's being taken up. Consequently, the right or the wrong of Sayers' action there, or the right or wrong of Griffin's presence there,— his acts under the circumstances,—have no material bearing upon the real question at issue, as to whether an assault was committed there or not."

The court erred in the refusal to instruct as requested, and in the instructions given. There was testimony from which the jury might have found that the highway commissioner was acting in the interest of Griffin, and not in the interest of the highway or the public. A highway bed is not a natural obstruction to the course of surface water. Culverts are necessary incidents of highway construction, and a highway commissioner cannot justify the destruction of a culvert on the line of a water course on the ground that it might become clogged or out of repair. The culvert is not, *per se*, a nuisance, no more than was the tree in the case of *Clark v. Dasso*, 34 Mich. 86. The conclusion of a highway commissioner as to the necessity of doing an act to improve or protect the highway, honestly arrived at, may not be reviewable by the courts, but he must keep within the sphere allotted to him by statute. He cannot, under color of power to preserve the highway, go outside, and undertake to adjust and determine matters involving private rights. In *Conrad v. Smith*, 32 Mich. 429, a bill was filed to restrain the cutting by highway commissioners of a ditch along the highway. The defendants insisted that the object was the improvement of the highway. The Court said that,

notwithstanding the claim of defendants that the pro-
jected drain was meant to be a mere highway ditch, the
facts did not bear them out; that the case did not serve
to show the semblance of need for the ditch on account
of the road.

"In connection with these considerations," say the
Court, "it must be observed that the mind cannot avoid
the impression, after an examination of the case, that the
real motive was not to benefit the highway, but to help
the surrounding lands, and that the power given to the
defendants, as highway officers, was made a pretext for
attempting what the laws governing such officers do not
warrant."

The Court say, further, that the proposed drain was
"an unlawful invasion of complainant's land within the
road limits."

In *Cubit v. O'Dett*, 51 Mich. 347, the action was case
against the overseer of highways for flooding plaintiff's
land by means of a ditch cut along the highway, which
had the effect, while draining the lands of defendants, to
cast upon plaintiff's lands a large amount of water, which
otherwise would not have flowed in that direction. The
defense claimed that the cutting of the ditch was right-
ful, because done under the direction of the overseer of
highways; but it was held that highway authorities
have no more right than private persons to cut drains, the
necessary result of which will be to flood the lands of
individuals. See, also, *Shue v. Highway Commissioner*, 41
Mich. 638; *Clark v. Dasso, supra*.

The defendant's right to have and maintain the culvert
was a matter which should have been submitted to the
consideration of the jury, and if they found that it was
constructed on the line of the natural water course; that
it was necessary, in order to prevent the water from
backing up upon defendant's land; and that the commis-
sioner was acting, not with reference to the protection of
the highway, but in the individual interest of Griffin,—

defendant's acts were justifiable. *People v. Foss*, 80 Mich. 559.

The conviction should therefore be set aside, and a new trial awarded.

Long, J., concurred with McGrath, C. J.