## ULMER *v.* SEELMAN.

1. Trespass — Assault and Battery — Justification — Highways.

In an action of trespass for throwing stones at the plaintiff and injuring him and for an assault with a shovel, the evidence showing that the plaintiff did not get out of the rig in which he rode, it is not a justification that the plaintiff drove out of the beaten track upon that portion of the highway cultivated by the defendant.

2. Same — Evidence — Character and Disposition — Quarrelsomeness.

Where a party claims in defense to an action of trespass for an assault that he was afraid of the plaintiff, because of the latter's reputation and quarrelsome disposition, it is error to exclude questions, on cross-examination of the defendant, which tend to show by specific instances his own disposition and reputation as to the same matters.

3. Same—Self-Defense—Evidence of Malice.

Testimony is improperly excluded which tends to show that the defendant bore ill will towards the plaintiff and his brother.

4. Same—Evidence—Collateral Issues.

A question by defendant's attorney as to the defendant's condition and appearance since the death of his son by drowning attempts to introduce improper evidence.

5. Same—Highways—Assault and Battery.

Error was committed by the trial judge in charging the jury, as requested by the defendant, that the owner of land along a highway is entitled to its use to the center, subject to the usual rights of travel by the public, under evidence which showed that the defendant was not attempting to eject plaintiff as a trespasser or to defend his premises against a trespass.

6. Trial—Jury—Improper Conduct of Parties.

Improper conduct of a party with the jury, known to the other party to the action during the trial and not brought to the attention of the trial judge by objection or otherwise, is not ground for a reversal.

Error to Ottawa; Padgham, J. Submitted October
13, 1909. (Docket No. 60.) Decided December 30, 1909.

Trespass *vi et armis* by John Ulmer against John
Seelman. A judgment for defendant is reviewed by
plaintiff on writ of error. Reversed.

*Walter I. Lillie,* for appellant.

*George A. Farr,* for appellee.

McALVAY, J. Plaintiff brought suit against defend-
ant for damages for personal injuries inflicted upon him
by defendant, who, he charges, seriously assaulted him
with stones, breaking a rib, and otherwise injuring him
permanently. Defendant pleaded the general issue, and
gave notice of self-defense in justification. That an
altercation occurred between these parties, and that plain-
tiff's rib was broken and his face bruised by stones
thrown at him by defendant, does not appear to be dis-
puted.

These men were farmers in Ottawa county, living on
farms a few miles apart. There had been some bad feel-
ing between them. Plaintiff was driving along the high-
way in front of defendant's premises on May 8, 1907, when
he met defendant, who was also in the highway with his
team and wagon at work picking up stones. The high-
way at this place was not fenced, and defendant cultivated
it up to the traveled track. Words were had between
them, and plaintiff claims that defendant attempted to
pull him from his buggy by the legs, and, becoming very
angry, threw two large stones at him, hitting him on the
side of his face, severely bruising it, and also striking him
in the side and breaking a rib, and then assaulted him
with a shovel. That he threw the stones by which plain-
tiff was injured is not denied, nor that plaintiff remained
in his buggy during the difficulty. Plaintiff had worked
on this day, May 8, 1907. He had drilled in 13 acres of
oats on a farm some distance from his home. He took his

dinner with him, and with it some hard cider. He finished this work at 4 o'clock in the afternoon, and took the borrowed drill to the home of the owner. He then started towards home with his team and buggy, and on his way passed defendant's farm, beyond which he stopped and talked with some acquaintances, at which time his former trouble with defendant was spoken of. While at this place he remembered that he needed mangel-wurzel seed, and started back for the village of Conklin to get it. There is evidence from these witnesses that the fact that he had been drinking was noticeable. Defendant's version of the affair is that plaintiff drove up, stopping on the cultivated land, and began to use threatening language towards him; that both of them called vile names; that plaintiff, while in the buggy, kicked at him, and threatened him, and arose in the buggy as if to get out, and he, in fear of great personal violence, picked up the stones and threw at plaintiff; that plaintiff afterwards circled twice around in his field and came back where he was, and he dodged to avoid being run over, and got the shovel, striking him as he went by the second time. Plaintiff claims that the blows from the stones rendered him unconscious, and when he came to himself the team was running away on defendant's field.

The result of the trial was a verdict of no cause of action, upon which a judgment was entered. Plaintiff moved for a new trial because of claimed improper conduct of defendant towards the jurors during the trial, because of the erroneous admission and rejection of testimony, and on account of errors in the charge of the court. This motion was denied, and the case is before us for review upon writ of error.

Errors are assigned upon the refusal to grant a new trial, and upon the rulings of the court during the trial of the case, and in charging the jury as above indicated. A large part of defendant's argument is taken up with a discussion of the question of the rights of an abutting owner in the highway passing along or through his prem-

ises, where he cultivates up to the beaten track, and it would seem from defendant's requests and the charge of the court that the case turned largely upon the question as to whether or not plaintiff was a trespasser. This probably arises from the fact that defendant claims that plaintiff, when he came up to defendant in the highway, drove out of the beaten track in going around him. Plaintiff testifies that in passing he turned out in the proper way, but defendant turned out on the same side, and compelled him to turn out farther to get around him. If plaintiff was a trespasser in turnin g out from the track, and got beyond the limits of the highway, which is very doubtful, that would be no justification for the assault of defendant committed upon him, as stated in defendant's testimony. The record is undisputed that plaintiff was in his buggy alongside of defendant and his wagon and team from the time he drove up until after he had been hit with the stones. Both parties so testify. Defendant says he was on the ground picking up stones when plaintiff stopped his team and began in a threatening manner to use profane and vulgar language towards him; that he told plaintiff to drive on about his business. He testifies:

"I says, 'You may drive where you are a mind to.' He says, 'I don't care anything about that, all I am mad about is because you wanted a contract.'"

(This refers to a lease of some pasture, out of which bad feeling between them arose.) Defendant further says that he did not know what he meant or was going to talk about, for he had not spoken to him for three or four weeks. He testifies:

"I was scared half to death when he first got on there, because he didn't speak to me."

In order to get a clear understanding of his testimony it must all be read with care. From it we find that he claims plaintiff next rose up as if to jump out of the buggy and kicked at him, striking his hands and arms; that in dodging he fell backwards, and then took up the

stones and hurled them at plaintiff. Then plaintiff drove away rapidly, circling around the field twice, and coming back both times to where defendant was, and he would have been run over had he not jumped out of the way. He went across the road and got a shovel and hit plaintiff across the back as he went by the second time. He also says he was physically a weak man.

Most of the errors assigned relate to the evidence excluded or admitted. We will consider such as appear of importance. During the trial defendant put in evidence tending to show the quarrelsome disposition and fighting propensities of plaintiff. Defendant had testified to plaintiff's disposition in that regard, and that he was afraid of him and "most scared to death" when he came there; that his heart thumped, and he did only what he thought necessary to protect himself. On cross-examination plaintiff's counsel sought to show defendant's disposition and reputation as to the same matters. This was not permitted by the court. We think this was proper cross-examination, as bearing upon the question whether or not defendant was in fact afraid of his life, and thrown into the condition he claimed on account of the presence of plaintiff, and as to his credibility. The questions called defendant's attention to specific instances. It was error not to allow the examination. It was material for the purpose offered.

Evidence offered tending to show malice and ill will on the part of defendant towards the Ulmers (being plaintiff and his brother) was objected to and excluded on the ground of incompetency and immateriality, and preliminary questions were stricken out, because two were included in the statements of defendant sought to be shown, and plaintiff was not personally named. This was error. If this testimony would show that plaintiff was one of the Ulmers towards whom he held malice or ill will, it would be material to the issue.

A doctor was being examined who had known defend-

159 MICH.—17.

ant for six years, and testified that he looked to be a man in ill health. Witness was then asked whether he knew of the death of a son of defendant by drowning a year before. Plaintiff objected on account of immateriality, and was sustained. Counsel for defendant then stated that it was for the purpose of fixing a date. Witness was then asked:

"*Q.* What can you say as to his condition and appearance, doctor, since that tragedy?
"*A.* It is the condition he has been in ever since I have known him."

This question, subject to objection, was again asked in the same words, and was answered in the same words. Plaintiff's objections and exceptions to these questions and answers were timely, and the last objection was clearly well taken. The testimony was immaterial and improper.

Plaintiff excepted to two requests of defendant given to the jury. These requests are based upon the case of *People* v. *Foss*, 80 Mich. 559 (45 N. W. 480, 8 L. R. A. 472, 20 Am. St. Rep. 532), where grass along a highway within its limits and outside the beaten track was wantonly destroyed. It will not be necessary to quote them, for the reason that the assault and battery relied upon in this case was not committed in ejecting a trespasser or in defending premises against a trespass. The requests were improperly given.

Certain portions of the general charge are excepted to, but as no requests appear to have been presented by plaintiff in the case, and the attention of the court was not called to the part complained of, we do not consider the question.

The questions raised upon the motion for a new trial relative to the improper conduct of defendant towards members of the jury were based upon knowledge which plaintiff had during the course of the trial, and no objection was made, nor were the facts called to the attention of the trial judge. The plaintiff cannot complain under

such circumstances. *Walker* v. *City of Ann Arbor*, 111 Mich. 4 (69 N. W. 87), and cases cited.

For the reasons herein stated, the judgment is reversed, and a new trial is granted.

BLAIR, C. J., and GRANT, MOORE, and BROOKE, JJ., concurred.