CORNELL *v.* FIDLER.

1. ASSAULT AND BATTERY—TRESPASS VI ET ARMIS.
    In *trespass vi et armis* to recover damages for assault and
    battery, where, after blows were struck, hostilities ceased,
    and plaintiff started to walk away, when he was struck
    by a stone thrown by defendant, the latter was guilty
    of assault and battery, although plaintiff struck the first
    blow in the original altercation.

2. SAME—QUESTION FOR JURY.
    Where the testimony was conflicting, the question as to
    whether the plaintiff was leaving the place when hit with
    the stone, or whether he had renewed the attack upon
    defendant, was a question for the jury.

3. SAME—TRIAL—INSTRUCTIONS.
    Instructions by the trial judge that the vital point was
    as to what happened immediately before the stone was
    thrown; that the striking of defendant by plaintiff was
    an assault and would not be justified because defendant
    used some words that he ought not to have used; that
    the jury had a right to take into consideration all that
    took place; that after the first altercation ceased the
    question was as to who then became the aggressor; that
    if plaintiff was retreating when defendant threw the stone
    and struck him, then defendant was guilty of assault,
    and plaintiff would be entitled to recover damages, were
    not erroneous and did not take from the jury the right
    to consider all of the facts connected with the occurrence.

4. SAME — CROSS-EXAMINATION — EVIDENCE — CHARACTER — DIS-
    POSITION.
    Where defendant had taken the stand as a witness, and
    had testified that he picked up the stone because he was
    afraid of plaintiff, it was within the discretion of the
    court to allow plaintiff's counsel to ask him, for the pur-
    pose of showing his character and disposition, if he had
    not thrown a club at a certain man, and at another time
    if he had not carried a piece of iron in his pocket and
    boasted that he would get a certain man.

5. SAME—WITNESSES—CREDIBILITY—IMPEACHMENT.
    Where defendant's father had testified that defendant had

thrown the stone in self-defense, it was proper, for the purpose of affecting his credibility, to ask him, on cross-examination, if he had not stated that the trouble was the work of his son, and, on his denial, to allow a witness to testify that he had so stated.

6. SAME—OVERWHELMING WEIGHT OF EVIDENCE—APPEAL AND ERROR.
   Where there was substantial evidence supporting the plaintiff's theory, and the trial judge denied defendant's motion for a new trial on the ground that the verdict was against the overwhelming weight of the evidence, this court will not reverse the judgment on that ground.

7. TRIAL—REOPENING CASE—DISCRETION OF COURT.
   The reopening of the case after the close of the arguments of defendant's counsel, and allowing plaintiff to offer further testimony, was within the discretion of the court, and no error was committed where no undue limitations were placed upon the examination of witnesses.

Error to Gratiot; Searl, J.   Submitted June 16, 1916.   (Docket No. 54.)   Decided December 30, 1916.

Trespass *vi et armis* by Clarence Cornell against Mahlon Fidler.   Judgment for plaintiff.   Defendant brings error.   Affirmed.

*John T. Mathews* and *Edwin H. Lyon*, for appellant.

*George P. Stone* and *William M. Smith*, for appellee.

PERSON, J.   This is a civil action to recover damages for an assault and battery alleged to have been committed on the 19th day of October, 1914.   Plaintiff recovered a verdict for $500, upon which judgment was duly entered, and defendant brings the case to this court by writ of error.

It is conceded that plaintiff struck the defendant a blow in the face, in the first instance, but it is claimed by plaintiff that the controversy in which that blow was struck had practically terminated, and that, as he was turning to leave the place, defendant hit him in

the back of the head with a stone, inflicting severe injuries.

It appears that the parties had not been on speaking terms for some time prior to the day of the assault. On that day they met on the street in the village of Ithaca where both resided. Plaintiff, who was riding a bicycle, got off his wheel, turned back, and spoke to defendant. Angry words followed, and plaintiff struck defendant. The parties themselves were witnesses upon the trial, and their respective claims as to what occurred can best be stated in their own language. Plaintiff's testimony as to the affray, abbreviating it as much as possible, was as follows:

"I struck him in the face with my left hand. I did not knock him down. I had a pair of tinners' shears in my right hand. He turned and run pretty near across the road. I followed him a few steps and then stopped. He picked up a stone and came back. His father, Lyme Fidler, came across the road and right around behind me and says, 'Boys you better get out of this and square it up.' I says, 'All right, Lyme; I am willing to do anything that is fair and square.' Defendant spoke up and says, 'Not by a God damn sight,' and I thought that was all that could be done, and I started for my wheel. Just as I started there was something went over my head, and in an instant there was something struck me in the back of the head, and that is the last I remember."

Defendant, upon the same subject, gave the following testimony:

"He struck me with his left hand. I should judge he had his hand around the middle of the shears below the handle. I turned around to get away from him. I went across the road; across the wagon track and picked up some stones. I picked up one on the south side, and one on the north side of the wagon track as I was going back to the walk. In returning to the walk I was going northeast. My father, L. W. Fidler, and my sister, also came out and father came up to where we two men were; came up between us. I

stopped. Mr. Cornell was then perhaps ten feet west of me. Father said, 'Cad, you are too good fellows to be quarreling.' My father said, 'Cad, what is the matter?' Cad says, 'He is cutting me out of my driveway.' Father said, 'He is not; he told me just the other day that he would not cut you out of any driveway.' Plaintiff said, 'Yes, he is; he is cutting me out of my driveway.' And there was something said about we had better cut it out and make up, and Cad says, 'If you are a mind to drop it right where it is, I will shake hands and try to be a neighbor.' I says, 'You cannot strike me in the face and call me a son of a bitch and turn around the next minute and make up.' I says, 'You just go on about your business and let me alone.' He walked back probably eight or ten feet, and I says, 'It is your wife that is causing a lot of this trouble.' He says, 'You cannot find one person in this town that will say a word against my wife.' And I says, 'I can; I can find one; I can find two.' And he raised those shears and made for me. And I threw the first stone, and he dodged that and made for me just like a sheep, you might say. After I threw the first stone, when he got in three or four feet of me— understand he was running as fast as he could come and watching to dodge the other stone—and as he dodged when he got his head down like this, I took him. He had his hat on. I was running backwards when the second stone I threw hit him in the head."

There was further testimony about the sequence of events, both from the parties and others, but the foregoing represents their respective theories. In stating the law applicable to these conflicting claims, the trial judge instructed the jury as follows:

"Now, gentlemen, the vital point in this case for you to take up first is whose story is true as to what happened immediately before the stones were thrown. I charge you as a matter of law that while the striking of the defendant by the plaintiff would be an assault, and the plaintiff had no right to strike him, even though the defendant had used some words that he ought not to have used possibly, yet that is not a matter that need be determined by you. You have

a right to take into consideration all that took place. I didn't mean to say you shall not consider everything that took place there from the time they met, but I, mean that the question that is submitted to you, that you are trying here is not the assault made by the plaintiff upon the defendant when he struck him in the first instance there, but the question for you to determine is whether or not an assault was made by the defendant upon the plaintiff at a time when the stones were thrown.  So the first and vital question in this case for you to determine is what the parties were doing just before the stones were thrown, after they got to talking there, after the plaintiff had struck the defendant and the father of the defendant had come out and they had their conversation there, and at a time when they were not fighting at all according to the story of all of them, take it up at that point and determine who then became the aggressor in the next move that was made.  And I charge you as a matter of law that if the plaintiff was retreating, if he had turned around, as he claims he had and was going back towards his wheel and was not renewing the attack or quarrel or fight they were having there but was going away from the defendant at the time the defendant threw the stone and struck him, then the defendant committed an assault and battery upon him, and the plaintiff would be entitled to recover damages in this case.  On the other hand, I charge you as a matter of law that if you find, as claimed by the defendant, that the plaintiff came at the defendant, perhaps that is the best expression I can use, advanced towards him, you heard the testimony, having the shears in his hands, if he renewed the attack or  quarrel or fight they were having there, then he cannot recover in this case, though he was struck upon the head by the stone and even though the injuries came from that, providing you find that the defendant did no more than he had the right to do in self-defense of himself under the rules that I shall presently lay down."

Counsel for defendant assign error upon this portion of the charge, and insist that it was not applicable

to the facts for the following reasons, stated in their brief:

"The affray in which plaintiff was struck lasted but a few minutes and was one continuous affray. In charging the jury, Judge Searl divided the affray into two parts and charged the jury, in substance, that they had nothing to do with the first part of the affray in which plaintiff struck the defendant, and stated that, 'The question for you to determine is whether an assault was made by the defendant upon the plaintiff at the time when the stones were thrown.' And the court further charged the jury in that respect as follows: 'Take it up at that point and determine who then became the aggressor in the next move that was made.' And in charging the jury the court proceeded upon the theory that there had been an affray which was ended and past and that the defendant was, under those circumstances, subject to the same legal duties and obligations at the time when the stone in question was thrown as though the first part of the affray had not occurred in which plaintiff struck the defendant and called him vile and indecent names."

It is probably true that the entire transaction occupied a comparatively short period of time. But it is conceded by both parties that after the first part of the affray, in which plaintiff struck defendant, there was a cessation of active hostilities. Defendant had returned from across the road and was standing not far from plaintiff. His father had interfered and urged them to stop quarreling and become friends. Defendant admits that plaintiff had offered to shake hands and try to be neighborly. If it was true, under these circumstances, that plaintiff had finally turned around and was going away, as he claims, when hit on the back of the head with the stone, defendant was guilty of assault and battery.

Whether plaintiff was leaving the place when hit with the stone, or whether he had renewed the attack upon defendant, was a question for the jury. As to

the real fact the parties are in absolute contradiction. The charge of the court was a fair explanation of the legal consequences resulting from their conflicting claims, and did not take from the jury the right to consider all of the facts connected with the occurrence. The instructions were not erroneous.

Upon cross-examination plaintiff's counsel was permitted to ask defendant if he did not, at one time, throw a club at the brother of the county clerk, and if, at another time, he had not carried a piece of iron in his pocket and boasted that he would get a certain man with it. It was objected on behalf of defendant that this was not proper cross-examination. We think the questions were within the discretion of the court. Defendant had testified that he picked up the stone because he was afraid of plaintiff, and it was competent to show his character and disposition. *Wilbur* v. *Flood,* 16 Mich. 40 (93 Am. Dec. 203) ; *Leland* v. *Kauth,* 47 Mich. 508 (11 N. W. 292) ; *Ulmer* v. *Seelman,* 159 Mich. 253 (123 N. W. 1124).

Defendant's father, Lyman W. Fidler, had given testimony tending to support his son's claim that he threw the stone in self-defense. On cross-examination he was asked if a young man named Davis did not inquire of him, shortly after the affray, what the trouble was about, and if he did not reply, "It is the work of this darn son of mine." The witness having denied both the conversation and answer, Davis was permitted to testify that the conversation did occur, and that the father gave him the answer stated. There was no error in permitting the cross-examination or in receiving the testimony of Davis. The answer which Davis claims the father made to his question was in a way inconsistent with the latter's testimony exonerating the son. Its weight was for the jury; and they were carefully instructed by the court that it could affect only the credibility of the father, and

could not be used as affirmative proof of the son's conduct.

It is also urged that the verdict was against the overwhelming weight of the evidence. It is true that more witnesses supported defendant's theory of the affray than plaintiff's. But there was substantial evidence supporting plaintiff's theory. And the circumstances of the case may have had much to do with the verdict rendered. It is conceded that the stone thrown by defendant struck the back of plaintiff's head, and it is conceivable that the jury may have given little credence to the claim that plaintiff was approaching defendant when it was thrown. It was the opinion of the circuit judge, on a motion for a new trial, that the verdict should not be disturbed. We cannot say that he was wrong in this. The rule has recently been considered in Re Cutter's Estate, ante, 34 (160 N. W. 605), and the cases fully cited.

We have carefully examined all of the other assignments of error, and do not find any upon which the judgment should be reversed. The reopening of the case was within the discretion of the court, and no undue limitations were placed upon the examination of witnesses at that time.

Judgment affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.