PEOPLE *v.* VANDERHOOF.

1. APPEAL AND ERROR—BILL OF EXCEPTIONS—VERITY ·MAY NOT BE QUESTIONED BY AFFIDAVIT OR PRESENTATION OF ORIGINAL TRANSCRIPT.

   The verity of a bill of exceptions as settled and signed by the trial judge may not be assailed by affidavit or presentation of original transcript.[1]

2. SAME—PROCEDURE TO CORRECT ERRORS IN BILL OF EXCEPTIONS.
   Where a bill of exceptions contains errors of fact, the

[1]Criminal Law, 17 C. J. § 3446.

proper procedure to correct them is by motion to remand to the trial court for resettlement.[2]

3. SAME—CASE DISPOSED OF AS MADE BY BILL OF EXCEPTIONS ON FILE IN CLERK'S OFFICE.

On failure of counsel to move to remand for resettlement of the bill of exceptions to correct errors, the Supreme Court must dispose of the case as made by the bill of exceptions on file in the clerk's office in so far as it differs from the printed record, disregarding the transcript and affidavit presented for such purpose.[3]

4. HOMICIDE—SELF-DEFENSE—QUESTION FOR JURY.

In a prosecution for murder, in which the plea of self-defense was relied upon by defendant, conflicting testimony as to who was the aggressor in the affray, *held*, to present an issue of fact for the jury.[4]

5. WITNESSES—CROSS-EXAMINATION RESTS IN DISCRETION OF COURT.

The extent of cross-examination of witnesses rests in the sound discretion of the trial judge, and unless such discretion is abused the Supreme Court will not interfere.[5]

6. SAME—CROSS-EXAMINATION—ABUSE OF DISCRETION.

Where, in a prosecution for murder, there was nothing on the record to show bad faith on the part of the prosecutor in the questions asked by him, and no abuse of discretion on the part of the trial judge, assignments of error based thereon are overruled.[6]

7. HOMICIDE—TRIAL—CONFLICTING INSTRUCTIONS.

In a prosecution for murder, an instruction that it was sufficient if there was a design and determination to kill in defendant's mind after the act was done, was prejudicial error, in view of testimony as to brutal acts and statements of defendant after the affray was over and before the victim died, although a correct instruction on said question was also given, since the Supreme Court cannot say which instruction the jury followed.[7]

Error to Gratiot; Moinet (Edward J.), J. Submitted January 14, 1926. (Docket No. 135.) Decided April 14, 1926.

[2]Criminal Law, 17 C. J. § 3457 (Anno); [3]Id., 17 C. J. §§ 3444, 3445 (Anno), 3446; [4]Homicide, 30 C. J. § 580; [5]Criminal Law, 17 C. J. § 3584; Witnesses, 40 Cyc. pp. 2512, 2513; [6]Criminal Law, 17 C. J. § 3584; [7]Id., 16 C. J. § 2495; 17 C. J. § 3691; Homicide, 30 C. J. § 590.

Ford Vanderhoof was convicted of murder in the second degree, and sentenced to imprisonment for not less than 15 nor more than 30 years in the State prison at Jackson. Reversed.

*W. J. Barnard,* for appellant.

*Andrew B. Dougherty,* Attorney General, *Romaine Clark,* Prosecuting Attorney, and *O. G. Tuttle,* Assistant Prosecuting Attorney, for the people.

FELLOWS, J. Upon the argument of this case defendant's counsel insisted that the word "not" inserted in writing in a portion of the charge contained in the bill of exceptions and which, of course, entirely changed the instruction, was improperly inserted, and to sustain such contention brought into court the original transcript. On behalf of the people, it was claimed that another portion of the charge upon which error was assigned had been incorrectly transcribed and an affidavit to that effect was filed. Both counsel were advised from the bench that the verity of the bill of exceptions as settled and signed by the circuit judge could not be thus assailed; that only by the granting of a motion to remand for a resettlement of the bill of exceptions by the circuit judge could the record be changed, and both sides were given time to make such motion. Both points were vital to the case. Neither side has made a motion to remand or given any attention to the case since, although the time has long since expired in which leave to make such motion was given, and we have delayed preparation of opinion as long as possible. We must, therefore, dispose of the case as made by the bill of exceptions on file in the clerk's office in so far as it differs from the printed record and disregard the transcript and affidavit.

Defendant was a farmer living on his farm in North

Shade township, Gratiot county, a few miles from Middleton. His wife was a school teacher and away from home during the week. His hired man was a paroled convict named Murringer who lived with him. On the 18th of February, 1924, one George Springer met his death at defendant's place. It is quite well established that deceased came to his death from a fracture of the skull and the crucial question in the case was, who was the aggressor in the affray, defendant's testimony and claim being that what he did was in self-defense, and the testimony of the hired man that defendant was the aggressor. His testimony tended to show that defendant struck Springer repeatedly, knocked him down, and after he was down kicked him repeatedly in the head on both sides; that after Springer died he asked him why he did it and defendant replied:

"This is a grudge that has been hanging on ever since we was in Cincinnati, Ohio, over a hat deal."

There was other testimony that he referred to an old grudge without specifying what it was about. The testimony of the undertaker and the doctors who performed the *post mortem* was to the effect that there were many bruises on the body of deceased, and that of the doctors that there was a fracture of the skull with cerebral hemorrhage causing death. We shall not detail the testimony further at this time. Some of it will be referred to further on in the opinion. It will suffice to say that the testimony justified submitting the case to the jury on the charge of murder, and whether the testimony bearing on that charge was much or little was for the jury and not for the court. *People* v. *Toner*, 217 Mich. 640 (23 A. L. R. 433).

There were exhaustive cross-examinations of both Murringer and defendant as to their antecedents. Defendant's counsel insists that of Murringer was un-

duly restricted and that of defendant was beyond justification. This court has held time and time again that the extent of such cross-examination rests in the sound discretion of the trial judge and unless such discretion is abused we will not interfere. Among the numerous cases see *People* v. *Bryan,* 170 Mich. 683; *People* v. *Kimbrough,* 193 Mich. 330; *People* v. *Cutler,* 197 Mich. 6; *People* v. *Danenberg,* 176 Mich. 337; *Cornell* v. *Fidler,* 194 Mich. 509; *People* v. *Murel,* 225 Mich. 499. We do not find any abuse of such discretion as to either cross-examination. There is nothing upon the record indicating bad faith on the part of the prosecutor in any of the questions asked by him. The assignments of error on this subject are overruled.

The record shows in the charge of the court the following instruction:

"It is not necessary that the killing should have been considered, brooded over or reflected upon for a week, a day or an hour. It is sufficient if there was a design and a determination to kill distinctly in the respondent's mind at any minute before or *after* the time the act was done which caused the death of the deceased."

This instruction is erroneous. It is in conflict with other portions of the charge and out of line with the general tenor of the instructions. But we have repeatedly held that this court can not say which instruction the jury followed where there are correct and incorrect statements of law in the charge. That it was especially prejudicial to defendant will appear by some of the testimony to which we shall now refer as to what occurred *after* the affray was over, and before Springer died. Murringer testified that after the affray and while Springer was lying on the floor defendant asked witness to help carry Springer outdoors. It was a cold, stormy night and Murringer protested that he would freeze, that defendant said:

"Let the —— —— —— freeze;" that defendant insisted on getting him out of the house and they carried him out.    A few minutes later Murringer suggested that they bring Springer back into the house and received the same reply.    That they finally brought him back in the house and later defendant picked up the stove poker and said: "I have a good notion to fix him, now is my chance while he lays there, he will never lay another hand on me," but that witness dissuaded him from going further.    By this testimony as to what occurred *after* the affray, the prejudicial character of the instruction is made apparent.

The other assignments of error do not require discussion.

For this error appearing on the record, the case must be reversed and defendant given a new trial. He will be remanded to the custody of the sheriff of Gratiot county.

BIRD, C. J., and SHARPE, SNOW, STEERE, WIEST, CLARK, and McDONALD, JJ., concurred.