HIGHWAY COMMISSIONERS OF EAGLE TOWNSHIP V. THOMAS ELY.

*Injury to abutting owners by lawful ditching—Obstruction.*

1. A commissioner of highways, or an overseer acting under his direction, incurs no liability to abutting owners if, in the proper exercise of his lawful discretion, and for the sole purpose of improving the highway, he runs a ditch in front of their premises which they have to bridge in order to reach the road.

2. The injury, if any, which a lawfully constructed ditch occasions an abutting owner, is damnum absque injuria.

3. Acts done by authority of a valid statute, and with reasonable care, will not support any liability for resulting damage.

4. Abutting owners have the right of access to the highway, and one who has been cut off therefrom by the running of a ditch, or the improvement of the road, may bridge the ditch, or grade the approach to his premises; but in so doing, he must not obstruct the ditch or the way.

5. It is "willfully" obstructing a public ditch for one who knows its character to purposely and perversely fill it up in a permanent way, even though his object is to obtain access from his lands to the highway, and the act is done under a mistaken notion of his rights.

Error to Clinton.   (V. H. Smith, J.)   April 25.—June 18.

CASE.   Defendant brings error.   Affirmed.

*H. J. Patterson* and *Spaulding & Barker* for appellant.

*L. W. Hill* and *Mitchell, Bell & McGarry* for appellee, as to the meaning of "willfully," cited *Com. v. Walden* 3 Cush. 558.

CHAMPLIN, J.   The commissioner of highways sued Ely in justice's court to recover the statutory penalty for willfully obstructing a ditch constructed for draining the highway, (How. Stat. § 1403,) and recovered judgment before a jury.   He appealed, and another jury trial was had, and he brings the case here on writ of error.

| 54 | 173 |
| 99 | 50 |
| 54 | 173. |
| 134 | 45 |
| 54 | 173 |
| 138 | 5623 |
| 54 | 173 |
| f151 | 1585 |

The record discloses that the defendant was the owner of lands adjoining the highway; that there was a hollow or sag in the road in front of defendant's lands, and on one side of the road-bed gravel had been taken for the purpose of repairing the road, leaving a dangerous pit. On defendant's land there was a swampy place, and he had caused a ditch to be made which drained the waters from this swamp in this low place in the highway, where it gradually percolated through the soil of the gravel-pit and disappeared. But at certain seasons there had been such quantities of water at this low place as to overflow the road, making the passage dangerous. For the purpose of draining the water from this low place and protecting the road-bed from overflow, the commissioner of highways directed the overseer of the road-district to dig a ditch along the side of the road, so as to carry off the water so accumulating in the highway as above described. The ditch, if constructed as directed, would pass in front of the gate of defendant leading to his wheat-field, in which a crop was then growing. The overseer, against defendant's objections, acting in obedience to the instructions of the highway commissioner, constructed a ditch from the gravel-pit past defendant's gateway, at which point it was from eighteen inches to two feet in depth, and extending southward beyond defendant's lands to a culvert across the highway, the whole length of the ditch being some six or seven rods. This occurred on the 20th day of June, 1882. When defendant objected to the digging of this ditch, the overseer told him if he would consent he would fix a safe and convenient passage over it if he had to build a bridge, but defendant refused, saying he did not want a ditch and would not have a bridge. On July 14, 1882, defendant, claiming that he wished to draw his wheat from his field, filled the ditch in front of his gate with rails, boards and gravel to the level of the adjacent surface. At this time no water was flowing in the ditch, and there was but little water in the pit, which defendant caused to be drained into the soil by loosening the earth with his spade.

It is claimed by the plaintiff that this act of filling up the

ditch was a willful obstruction of the ditch dug for draining the highway, while defendant insists it was for a lawful and necessary purpose, and did not injure or obstruct the ditch or the highway, nor did water reach this point so that a ditch was necessary, or if it ever flowed there it was because the overseer had turned it out of its proper channel and filled up a gravel-pit where the water formerly made its escape.

The jury, besides finding a general verdict for plaintiff, also found in answer to special questions, as matter of fact, that the ditch served to drain the highway at the time the defendant filled it up; that the object of the defendant in filling up the ditch was to obstruct it; that filling it up tended to prevent the public from passing and repassing; that the defendant filled it up without any authority, and not for the purpose of enabling him to draw out wheat from the adjoining lot; and that the digging of the ditch did not change, but did define a water-course.

Errors are assigned upon the rulings of the court in refusing to charge as requested by the defendant's counsel. These requests were as follows:

5. Notwithstanding the public have at all times the right to repair the road and bridges, and to keep them in reasonable repair, they are nevertheless bound to respect and observe the rights of the land-owners. And in this case, if the jury find that the defendant was in the habit of passing out and in from the highway and into his field, and had been for a long time in the habit of so doing, and had used the same for his own road, and had maintained a gate there for that purpose, then in that event he would have a right to use and enjoy the same as long as it did not interfere with the public travel.

6. While the public have the right to do all and every act necessary to keep the road in repair, it must be done in a reasonable manner, and the repairs must not injure the premises nor the rights of the land-owner. They both have rights; and while the commissioner of highways has a right to enter upon the defendant's lands, so far as is necessary to repair the roads, he would have no right to do anything that would permanently hinder the defendant from passing onto his fields. And if you find that the commissioner or overseer of highways dug, or caused to be dug, the ditch in ques-

tion in front of the defendant's gateway, and then left the same open in such a way that he could not pass out and into his fields as he formerly had done, and as he was compelled to in order to draw his crops into his barn, then in that event the defendant would have a right to repair or fix the same so as to enable him to pass over with his team and vehicles, and this he could do in any way he might choose, so long as he did not in any way hinder the public travel or unreasonably injure the highway; and even if it did injure the highway, and, unavoidably, temporarily hindered the public travel, the land-owner has such an unqualified right to the soil that he might be justified in temporarily obstructing the highway for his individual benefit. The right of the overseer of highways to the use of the defendant's land, and to repair the roads and bridges in a reasonable manner, are the same rights and duties as are conferred upon the land-owner, so far as the use he makes of the same.

7. If the jury find from the evidence that the ditch in question diverted the water from its natural course, and caused it to flow where it could not and would not naturally flow, and in the digging of the same in front of the defendant's gateway, and leaving the same open, and thereby obstructing its passage-way out and into his field, it would be unauthorized, and would constitute an unlawful act on the part of the overseer of highways, and the defendant would have a right to fill it up as far as it would be necessary to pass out and in, so long as he did not in any way interfere with the public right of way.

11. If the jury should find from the evidence that the act of the defendant in filling up the ditch was to enable him to draw his wheat out of his field or into his barn, and that in doing so he used his customary road, then in that event, he would have a perfect right to do so, so long as he did not unreasonably hinder the public travel, and it would not be willful obstruction within the meaning of the statute, and the plaintiff could not recover.

It will not be necessary to examine these requests in detail. A statement of the law governing the respective rights of the public authorities with reference to the highways and the adjoining land-owner will be sufficient to show that these requests are based upon an erroneous view of the legal rights of the parties. The duties and authority of the commissioner of highways and of overseers are prescribed

by How. Stat., tit. ix, ch. 29. So far as the questions under consideration are concerned they are the same as those prescribed by Comp. L. (1871) ch. 23, under which the case of *Conrad v. Smith* 32 Mich. 429 was decided, in which it was said : " Under and subject to these regulations commissioners may provide for such ordinary highway ditches and culverts as the good of the road shall dictate ; but they cannot lawfully depart from this object, which is the beginning and end of their authority, and, under color of ditching to improve a road, proceed to cut drains to promote the health of the neighborhood and improve the surrounding lands and increase their value. The power to ditch and drain for road purposes is necessarily very limited, and. its exertion is only authorized when the sole end of such exertion is the improvement of the road and the consequent benefit to the public ; and the power, after being rightly set in motion in connection with an authorized object, cannot be lawfully carried beyond such object and into a domain which the law has assigned to another system and authority. * * * In the case of mere highway ditches the whole matter is summary and substantially of discretion, and no provision is made for allowing damages, the law assuming that the work is to be exclusively upon public grounds and for the public benefit, and that nothing is authorized to be done which could fairly be considered as a private and individual damage."

If, therefore, in this case the ditch in question was such an ordinary ditch as the good of the road should dictate; if the sole end of constructing it was to improve the road and the consequent benefit to the public; and if in carrying out this object it became either necessary or expedient to dig the ditch in front of the defendant's premises and past his gateway, the commissioner, or overseer acting under his directions, had a right to do it ; and if in the execution of this power, which was entirely in their discretion, they dug the ditch to such depth and width as to render it impassable for teams or vehicles going in or out of defendant's fields, they would incur no liability to defendant. It would be the per-

formance of a public duty and the exercise of lawful author-
ity, from which, if defendant suffered injury, it would be
damnum absque injuria. There is no liability for doing an
act which is either directed or authorized by a valid statute,
if performed with reasonable care and skill. There is no
law which requires the township authorities, in making or
repairing roads, to construct proper or convenient passage-
ways to enable an adjoining land-owner to reach the traveled
part of the highway. If in filling up the low places or in
cutting down the hills to improve the public roads an adjoin-
ing land-owner is inconvenienced, or his land made more
difficult of access, it is an inconvenience or loss which he
sustains for the public benefit. He has a right of access to
the public street, and if necessary for him to reach the
traveled part, he has the right to bridge a ditch or construct
a grade for that purpose; but in doing so he has no right to
willfully obstruct such ditch or highway, his rights as a pri-
vate land-owner being subordinate to the public right of con-
structing and keeping the highways in repair.

The circuit judge instructed the jury that if the end
sought by the commissioner and overseer was the improve-
ment of the road, then their conclusion as to the necessity,
honestly arrived at, could not be reviewed by the court. But
if the ditch was not made for the purpose of draining,—if it
was done for any other purpose; if done to annoy or spite
or injure the defendant,—then they had no right to make it.
That their duties were to look after the roads and highways,
and to do such acts as, in their judgment, were necessary for
the improvement and repair of them, and such as tend in
some degree, at least, to accomplish that purpose; and if they
should step outside of that, and under cover or claim of
doing it to improve the highway, really do it for some other
purpose, then the law would not protect them in their act;
they would be just as liable as though they were strangers,
and if done to annoy or spite or injure the defendant, he
could lawfully and properly fill it up.

He also charged the jury as requested by the defendant,
that "if the jury find that the overseer of highways exca-

vated at the side of the highway on the defendant's land, and in front of the defendant's gate-way, the ditch in question, and that it did not have the purpose of draining the highway, but was only a hindrance to the passage from the defendant's fields to the highway, and interfered with the use of the defendant's land, or the property, then in that event the defendant would have the right to fill it up so that he could pass out and in, without any direction from the overseer or commissioner, and it would not be a willful obstruction of the ditch within the meaning of the statute."

And in conclusion the judge charged as follows:

"The statute reads, gentlemen of the jury, 'who shall willfully obstruct any highway, or fill it up, or place any obstruction in any ditch constructed for draining the water from any highway.' Now if you should find that the ditch was dug for the purpose of improving,—honestly dug for that purpose,—and it did tend in some degree to drain the water from the road, then I don't think, under the statute, you would have to find that the man who filled it up did it out of malicious motives, or through malice or spite against any person. It reads: If he shall willfully obstruct any highway, or fill up or place any obstruction in any ditch. Now if he goes there and knowingly fills it up, if dug as I have before stated, and it tends in some degree to do what it is dug for,—knowingly fills it up,—it seems to me, under the language of the statute, he would be liable. In other words if the word 'willful' applies to the filling up or placing any obstruction in any ditch, that it is to be used in this sense in contradistinction to accidentally; that he willfully and knowingly does this,—does it wrongfully and without right. But if the ditch, as I have told you before, was put in there by the overseer of highways, he honestly thinking that it would accomplish the object of draining the road, and yet, after it was in, it did not tend at all to do the thing, it was simply a ditch or gully in front of this man's gate. If that was the fact you find from the evidence, then I do not think there would be any wrong in the man filling it up so that he could get in to his land and draw out his wheat.

The burden is upon the plaintiff in this case to make out a cause of action. He comes into court saying that the defendant has done wrong, and he must establish his allegations by a preponderance of evidence. If the evidence is equally balanced in your minds as to any given point, upon

that point you must find for the defendant. I do not mean that there must be more witnesses on one side than the other, but the evidence must be of such a character that it is more convincing to your minds upon every material point, in order to find for the plaintiff. If the plaintiff recovers at all in this case it is conceded that it is twenty-five dollars; that is the amount fixed by the statute; so that your verdict would be, if for the plaintiff, in the sum of twenty-five dollars; if for the defendant, not guilty."

And the court refused to charge as requested by the defendant in his tenth request, as follows:

10. The word "willful" here used, when properly defined, means being controlled by the will in contradistinction to reason,—that is, obstinate, stubborn, perverse, inflexible,—and does not include the filling up the ditch by the defendant in good faith and for a justifiable purpose.

The word "willfully," when used to denote the intent with which an act is done, is a word which is susceptible of different significations, depending upon the context in which it is used. It is employed in penal statutes more frequently to distinguish between those acts which are intentional and by design and those which are thoughtless or accidental. It may sometimes mean corruptly or unlawfully, or again designedly or purposely, with an intent to do some act in violation of the law. *Com. v. Bradford* 9 Met. 270; *Com. v. Brooks* 9 Gray 303; *Com. v. McLaughlin* 105 Mass. 463. Sometimes it is used as implying an evil intent without justifiable excuse. 1 Bish. Crim. Law § 428; *State v. Abram* 10 Ala. 928; *McManus v. State* 36 Ala. 285; *Com. v. Kneeland* 20 Pick. 206; *U. S. v. Three Railroad Cars* 1 Abb. U. S. C. C. Rep. 196. A similar statute was for many years in force in Wisconsin,—section 101, ch. 19, Rev. St. (1 Tayl. Stat. p. 508, § 137,)—which enacted that "whoever shall willfully obstruct any highway, or fill up or place any obstruction in any ditch constructed for draining the water from any highway, shall forfeit for such offense a sum not exceeding twenty-five dollars; and the overseer of the proper district shall cause such obstruction immediately to be removed."

The case of *State v. Preston* 34 Wis. 675 was one involving the construction of this statute, and especially that element pertaining to the word "willfully," and the court reviewed and commented upon many of the authorities above cited. The supreme court held that the word "willfully," employed in the statute to characterize the offense, could not be construed so as to embrace an obstruction erected in the most perfect good faith by the land-owner, believing that no highway existed at the place, and acting under the advice and direction of the proper public officers charged by the law with the general supervision and control of all the roads and highways in the town. The obstruction complained of in that case consisted of a fence erected in what was claimed to be the public highway. The defendant had petitioned the supervisors of the town, who were clothed with the power to take up the highway, and they refused to act, saying there was no highway there, and advising defendant to fence it up, which he did. The court say: "An obstruction so created cannot be regarded as willful, within the meaning of the statute, even under the mildest construction which can here be put upon that term. It may be unlawful, and so determined in the end, notwithstanding the opinion and advice of the supervisors, for they may be mistaken; but it cannot be said to have been erected with that intent or unjustifiable purpose made necessary by the statute to constitute the offense for which a penalty has been imposed."

If we should apply the reasoning of that decision to this case, how would it stand? Does the record show that the defendant placed the obstructions in the ditch in question with that intent and unjustifiable purpose made necessary by the statute to constitute the offense for which the penalty has been imposed? There is no question about the legal existence of the highway, nor of the expediency of draining the water from the highway. Defendant denied the right of the public officers to cut a ditch in front of his gateway; acting under a mistaken notion of his rights, he placed obstructions in the ditch permanent in character, and so as to totally obstruct it for the purposes of draining the water from the

highway. The act was intentional, and testing his motive by the facts that he said he would have no ditch there and no bridge there, and his filling the ditch with rails and gravel to the level of the adjacent surface, there can be no doubt but that it was willful, even in the sense contended for by his counsel of being obstinate, stubborn, perverse and inflexible. The fact that one object he had in view was to draw away his wheat, did not justify him in obstructing the ditch, for he could and should have accomplished that object by bridging over, or in some other method which would not have obstructed the ditch.

The judgment of the circuit court must be affirmed.

The other Justices concurred.