125    109
134   ³ 43

## DERHAM *v.* DERHAM.

1. HUSBAND AND WIFE—ALIENATION OF AFFECTIONS—EVIDENCE —PRIVILEGED COMMUNICATIONS.

Under 3 Comp. Laws 1897, § 10213, which provides that a husband or wife shall not, without the consent of both, be examined, during the marriage or afterwards, as to any communication made by one to the other during marriage, a divorced wife cannot testify, in an action against her husband's father for alienating his affections, as to the contents of a lost letter written to her by the husband during the continuance of the marriage relation.

2. SAME—HEARSAY.

Where, in an action by a divorced wife against her husband's father for alienating his affections, the plaintiff was asked why the husband left her at a certain time, it was error to refuse to strike out an answer that the husband had told her that his father had paid him to leave.

3. SAME—RELATIONS OF PARTIES.

In an action by a divorced wife against her husband's father for alienating his affections, the plaintiff's mother was permitted to testify that the husband came to her house on one occasion, when the plaintiff was ill, to ask the witness to attend her, and that he gave it as his reason for coming at an early hour that he could not get a horse after defendant arose. *Held*, that, while the evidence might be admissible as

tending to show the husband's feelings towards his wife, the jury should have been clearly instructed that it could not be used as substantive proof of defendant's relation to the parties.

4. SAME—HEARSAY.

And evidence that the husband also said that his father did not want him to take the horse should have been excluded as hearsay.

5. SAME—PRIVILEGED COMMUNICATIONS—REBUTTAL.

Error in permitting a divorced wife to testify, in an action against her husband's father for alienating his affections, to communications during coverture, in substance that her husband refused to get a doctor for her when she was ill, was emphasized where the husband's testimony that he thought a doctor unnecessary, proper to rebut the inference that the refusal was due to the fact that his affections had been alienated, was stricken out by the court as incompetent.

6. SAME—STATEMENTS OF PLAINTIFF—DAMAGES.

In an action by a divorced wife against her husband's father for alienating his affections, statements by the wife that she married the husband because she supposed he had more money than he did have, and that she was ashamed of her husband, are admissible, as bearing on the question of damages.

7. SAME—CAUSE OF SEPARATION—CROSS-EXAMINATION.

Where, in an action by a divorced wife against her husband's father for alienating his affections, she has testified that she would not live on the defendant's farm, she may be asked if her husband would not have continued to live with her if she would have remained on such farm; and the husband may be permitted to answer the same question.

8. SAME—FRIENDLY RELATIONS.

In an action by a divorced wife against her husband's father for alienating his affections, it was error to refuse to permit defendant to show that he gave certain provisions and other things to the son and his family, on the ground that they were gratuities to the son, since such testimony would have tended to show the relations existing between the parties.

9. SAME—REPUTED WEALTH OF DEFENDANT.

Evidence of the reputed wealth of defendant is inadmissible in an action by a divorced wife against her husband's father for alienating his affections.

10. SAME—COMMENCEMENT OF SUIT—ATTENDING CIRCUMSTANCES.
  Where a divorced wife sues her husband's father for alienating
  his affections, she may be asked when she commenced her
  divorce suit and a slander suit against the defendant, and
  their attending circumstances, since they may throw light
  on her reason for leaving the husband; as well as on the sub-
  ject of damages.

11. TRIAL—ARGUMENTATIVE REMARKS OF COURT.
  It is not proper for the court to suggest in the presence of the
  jury, in an argumentative way, the inferences that may be
  drawn from the testimony.

12. SAME—REQUESTS TO CHARGE—AMBIGUITY.
  A request to charge beginning, "If you should find from all
  the evidence in the case, and the *circumstances surrounding*
  the same," is open to the criticism that, in the absence of
  explanation, it implies that the jury may base their findings
  on something outside of the evidence.

13. SAME—INSTRUCTIONS.
  A charge made up solely from requests is ordinarily so dis-
  jointed as to be objectionable.

Error to Shiawassee; Smith, J.    Submitted October 10,
1900.    Decided October 31, 1900.

Case by May Rosa Ada Derham against William Der-
ham for alienating the affections of plaintiff's husband.
From a judgment for plaintiff, defendant brings error.
Reversed.

*Albert L. Chandler* (*George R. Gold*, of counsel), for
appellant.

*John T. McCurdy* and *Edwin H. Lyon*, for appellee.

HOOKER, J.    The plaintiff recovered a verdict and
judgment against her husband's father in an action
brought to recover damages for the alienation of her
husband's affections from her.    The defendant has brought
the case here by writ of error.    There are many assign-
ments of error, most of which relate to the introduction of
testimony.    We cannot consider each, and will dispose of
the case upon its main points.

The plaintiff was a witness, and testified to conversations in which the defendant asked her husband to leave her, and made threats of disinheriting him if he did not. Other witnesses gave testimony tending to corroborate her, and establish her claim.

The plaintiff testified that in 1895 her husband left her, and was away five days, and that during his absence the defendant told her that her husband was not coming back to live with her. Two days later, John, her husband, came home, after which they continued to live, apparently amicably, together. A day or so before his return, she received a letter from him, which she had searched for, but was unable to find, and thought she must have destroyed. She was permitted to testify regarding it:

"He wrote me, and asked me if I would forgive him. He says, 'I will never do it again.' He says, 'I wouldn't have done it this time if it hadn't been for my father.' He says, 'You know father was mad because I took the horse and went after your mother.' He says, 'I won't listen to them again.' He says, 'I will bring you a ring, umbrella, and clock if you will forgive me;' and when he came he brought those articles."

This testimony was objected to on several grounds:

1. Because the writing was not shown to be that of her husband.

2. It was a confidential communication, and was therefore inadmissible, under the statute.

3. It was hearsay as to the statements concerning the defendant.

We are of the opinion that this testimony should not have been admitted. It was a communication to the wife by the husband, and it was not competent for her to state it without his consent. 3 Comp. Laws 1897, § 10213, and cases cited. See *Maynard* v. *Vinton*, 59 Mich. 152 (26 N. W. 407, 60 Am. Rep. 276), where, in speaking of such a statement, Mr. Justice CHAMPLIN said:

"This, according to the statement of the witness, was a communication of the most confidential nature made by his wife to him during the marriage, and under circum-

stances which brought it within the prohibition of the statute. It was one which, after her death, he could never be permitted to testify to, because it could not then be done with the consent of both. In this respect it stands on the same plane as those communications which are made to a person's confidential adviser,—an attorney, priest, or physician,—who, after the death of the party, is not permitted to disclose such communications. The privilege is the privilege of the person making the communication, and can only be waived by him personally; and the personal representative has no right to waive it, even in the interest of the estate. * * * This statute rests upon public policy, and the seal which the law has fixed upon communications between husband and wife during marriage remains forever, unless removed by the consent of both. The death of one cannot remove the seal of secrecy. If it could, the policy of the law would be defeated."

The letters referred to in *McKenzie* v. *Lautenschlager*, 113 Mich. 171 (71 N. W. 489), were from the wife to a friend, and not to her husband, and their introduction does not, therefore, furnish a precedent justifying this testimony.

The plaintiff had testified to the fact of her husband leaving home on one occasion, and she said that the defendant had hired him to go. On cross-examination she was asked this question:

"*Q.* At that time, instead of his being hired to go away, it was understood between you and him that he was going to look up a location, wasn't it?

"*A.* He told me he had been hired to go away."

Counsel moved to strike out the answer as not responsive. The statement was one which the law forbids. It was not admissible, and should have been stricken out.

A witness—one Joseph Frank—was asked, "Did you have a conversation, during the time you were working there, with John, about his father wishing he had married some other girl?" He answered: "Yes. He said his folks did not really like Rose. He had a chance to marry others, and he wished he had."

Henry Parkhurst, plaintiff's father, testified that John came to his place early one morning, after his wife, on the occasion of the birth of plaintiff's first child. He was asked by plaintiff's counsel:

"*Q.* Was there anything said by John in reference as to why he came so early?

"*A.* He said he couldn't get the horse any other time, only before the old gentleman got up. And he said he didn't put the bells on; he put them under the seat, and did not put them on until he got past Jim Kirby's."

His wife, Henrietta Parkhurst, was permitted to testify to the same, and that he said, "the old gentleman did not want me to have the horse." This last statement was hearsay, and inadmissible. See *Edgell* v. *Francis*, 66 Mich. 305 (33 N. W. 501). The former may have been admissible as tending to show his feelings towards the plaintiff. *Edgell* v. *Francis*, *supra*. The jury should have been instructed to discriminate between its value for such a purpose and its use as substantive proof of defendant's relation to the parties. As to that it was hearsay, and, in the absence of specific and emphatic instructions to disregard it, dangerous to the defendant to an extreme degree. The same may be said of the statements in relation to the letter.

The plaintiff testified that on one occasion she was sick with "lung trouble," and John refused to get a doctor. This, too, was a communication that she should not have been permitted to repeat, but is mentioned here in another connection. The parties having been divorced, John was a witness for the defendant, and was asked about the matter. He testified that he had not thought a doctor necessary. The court ordered his answer stricken out, with the remark, "He isn't a doctor." This testimony tended to rebut the inference that his refusal was because his affections had been alienated, and was admissible.

The plaintiff denied that her marriage was from mercenary motives, and her attention was called to an occasion when she was alleged to have stated that she married

John Derham because she supposed he had more money than he did have. She denied making such statement. The court refused to permit proof that she made it. Such a fact was admissible as bearing upon the question of damages.

Proof that plaintiff had been heard to say that she was ashamed of John was excluded. It should have been received, both as bearing upon the question of damages and as throwing light upon the cause of his loss of affection. It was excluded upon the ground that it was leading, and on that account we might not be justified in reversing the case upon that ground.

Plaintiff was asked on cross-examination whether, if she had stayed and lived there on the farm, John would have lived with her. It was competent to ask her opinion upon this subject. She doubtless knew whether he would or not. But the court excluded the answer upon the ground that she could not know what he would have done in such a case. She had already testified that she left him, and soon after sued for divorce, because she would not live longer upon the premises of defendant, and he would not provide another home.

The court refused to permit counsel to show that the defendant gave his son and his family provisions and other things, in which she and her children shared, "because they were gratuities to John." We think this testimony was competent to show the existing relations and feeling of the defendant towards the family. The court said: "The question is whether, by showing good feelings, you can overbalance the other feelings," etc. And he proceeds by saying in the presence of the jury:

"It may be possible while he was living with the family —but I don't express any opinion about that now—that he might be treating his son with extraordinary care and kindness for further purposes. I don't think it is proper evidence to show the gratuities by the father, William Derham, to his son, John," etc.

These remarks would have been more appropriate from plaintiff's counsel.

John was asked whether he would have continued to live with plaintiff if she had not left him. The answer was erroneously excluded. Some dispute arises over the question, but, if the word "not" was omitted, as claimed, it was doubtless a clerical error. The case does not turn on this, however.

Testimony was given tending to show the reputed wealth of the defendant. In actions of slander and libel the reputed wealth is the important consideration, because it is the reputed, and not the actual, wealth that affects the question of the slanderer's credibility; and this court has held that testimony tending to show the actual pecuniary condition of a defendant is inadmissible. *Farrand* v. *Aldrich*, 85 Mich. 600 (48 N. W. 628); *Brown* v. *Barnes*, 39 Mich. 214 (33 Am. Rep. 375). In *Randall* v. *Evening News Ass'n*, 97 Mich. 138 (56 N. W. 362), it was said:

"Evidence of this character has been held competent by this court upon the sole ground that the defendant's reputation in this respect is an element of social rank and influence, and may therefore tend to show the extent of the injury suffered."

It was the actual, and not the reputed, wealth of the defendant, if either, that affected the question of damages; and therefore reputation, being hearsay, was inadmissible.

Counsel should have been permitted to ask the plaintiff when she began her divorce suit and her slander suit against the defendant, and their attendant circumstances. They might throw light on her reasons for leaving her husband, as well as upon the subject of damages.

The charge consisted mainly of requests to charge offered by the respective counsel. Several of those offered by plaintiff's counsel began with the following language: "I charge you, if you should find from all the evidence in the case, and the circumstances surrounding the same," etc. Just what was meant is not clear. It is true that a transaction is to be viewed in the light of surrounding circumstances shown by the evidence; but surrounding circumstances appear to be mentioned and

reiterated as though affording some light in addition to the evidence. It may or may not have been misunderstood, but the judge might prudently have explained what was meant by this language, or omitted it, giving an explanation of the rule in a general way. We think that the jury would have been aided by a connected charge, in which such requests as the court thought to be proper, and desired to give, might have been included in the proper connection. A charge made up solely from requests, given verbatim or with slight alterations, can rarely fail to be disjointed, and not comprehensive, and such are not infrequently confusing to the jury. A judge hardly discharges his full responsibility if he does not make plain to a jury the nature of the questions they have to decide, and their bearing upon the case under consideration.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.