## ZIMMERMAN *v.* WHITELEY.

1. HUSBAND AND WIFE—ALIENATION OF AFFECTIONS—EVIDENCE.
    In an action by a man against his mother-in-law for alienating his wife's affections, evidence showing the amount of property left by defendant's husband, and that it has never been divided between her and his wife, is inadmissible, as the wife is under no obligation to support her husband.

2. SAME—MOTIVE FOR MARRYING.
    In such action, testimony that plaintiff, before his marriage, made inquiries concerning his wife's and her mother's property, and that, after his marriage, he attempted to obtain money from his mother-in-law, is admissible, since it tends to show that his purpose in marrying was mercenary, and not for love.

3. SAME—WIFE AS WITNESS.
    Where plaintiff had testified to what his wife had said in

various interviews between his wife, himself, and defendant in such action, it was not error for defendant to offer the wife as a witness.

4. MALICE—WHAT CONSTITUTES.
   Malice, in a legal sense, means a wrongful act done intentionally, and without just cause or excuse.

5. SAME—ALIENATION OF WIFE'S AFFECTIONS—ACTION AGAINST PARENT.
   A husband cannot recover damages from his mother-in-law for alienating his wife's affections, unless she was actuated by malice or bad motives towards the plaintiff in advising her daughter to live with her instead of her husband.

6. TRIAL—INSTRUCTIONS—PREPONDERANCE OF EVIDENCE.
   An instruction that plaintiff must satisfy the jury by a "clear preponderance" of evidence is not prejudicial error, where the instructions as a whole are calculated to impress the jury with the view that only a preponderance is required.

Error to Ingham; Wiest, J.   Submitted April 24, 1903. (Docket No. 23.)   Decided July 8, 1903.

Case by William F. Zimmerman against Elizabeth Whiteley for the alienation of his wife's affections. · From a judgment for defendant, plaintiff brings error.   Affirmed.

*Q. A. Smith* and *O. J. Hood* (*L. B. Gardner*, of counsel), for appellant.

*Charles F. Hammond* (*S. L. Kilbourne*, of counsel), for appellee.

GRANT, J.   Plaintiff brought this suit against the defendant, his mother-in-law, to recover damages for the alienation of his wife's affections.   His wife is the defendant's only child.   Defendant's husband died several years ago, and his daughter and she had lived together since his death.   They were members of the Episcopal Church. Plaintiff and his wife were married October 28, 1896.   He concedes that it was understood before their marriage that they were to live with the defendant, in her house and home,—an arrangement which the defendant very much

desired. They lived there until September, 1897, when plaintiff claims that he provided another residence and home for himself and wife, and requested his wife to occupy it with him. She did not go, and plaintiff left defendant's house and his wife.

The conduct of the trial and the plaintiff's ground for recovery are anomalous. According to the plaintiff's own evidence, his wife's affections have not been alienated, but, at the time he left her at her mother's house, she maintained for him a wife's love and affection, and only remained at the home of the defendant through the influence of her mother. He testified that, for two weeks after he left defendant's house, he called every day, and "everything was quiet and nice., Nellie talked with me, and we were in a room by ourselves when we chose, and no interference from Mrs. Whiteley. Everything with Nellie and myself was pleasant." He testified that, when he asked his wife to accompany him to the house he had prepared, "Nellie bade me an affectionate good-bye. I kissed her. She returned it, and I went away." He called at defendant's house after that, and she called his wife to see him, and they had a private interview. He further testified:

"I lived in the house in accordance with the understanding before marriage. It was a very good place to live,—good table, good rooms. We had the front room, 18 feet square, upstairs, dressing room, plenty of furniture. The house was convenient to my work in the Donsereaux Block. Have no further complaints than those stated. [These complaints were that his wife had not always occupied the same bed with him.] * * * Was welcomed by my wife up to the time I came from my father's farm. Don't think I was welcomed by Mrs. Whiteley. She shook hands, and offered to kiss me; but I would not. She made me presents,—a watch, an overcoat. She and Nellie gave me a diamond ring and stud, and some money. Mrs. Whiteley gave me a full-length painted portrait of myself. Talked with my wife about redeeming my father's farm in January or February, 1897. Don't think I talked with Mrs. Whiteley then; did afterwards. I did not get angry about

it.   I occupied studio rooms of Mrs. Whiteley's before and after marriage, rent free."

Stated in the language of plaintiff's counsel, his claim is that—

"The defendant, by her influence and control over Nellie, kept her from occupying the plaintiff's bed, and that her interference in that respect continued and increased, until she had been kept and remained away from the plaintiff, and from occupying his room at night; that he then undertook to, and did, procure, furnish, and fit up a suitable residence and home for himself and wife, and used his best efforts to persuade and induce her to come and live with him; that defendant, by her influence and control over Nellie, wrongfully persuaded and induced her to refuse to go and live with her husband."

Plaintiff called as his first witness the defendant herself, and interrogated her fully as to his relations with her, and the alleged acts of interference by her between him and his wife.   Her evidence showed that she treated him with the utmost consideration; that the only occasions on which the wife had left her husband's bed, and spent the nights with her mother, were when she was ill; on one occasion, for two nights in Chicago, when she slept with her mother at plaintiff's suggestion, because her room was better heated, and his wife was ill with a cold; and on another occasion, for two nights, when they were on a visit to his father's, when she slept with her mother at the plaintiff's suggestion, because his room was small and hot.   Plaintiff then took the stand, and contradicted her in many of the acts and conversations to which the defendant had testified.   He was not compelled to call her, and by calling her he made her his own witness.   How far he is bound by her testimony, and how far he could be permitted, under these circumstances, to impeach her by contradicting her, are questions not argued by counsel, and are, perhaps, not necessary to a determination of the case.   See *Craig* v. *Grant*, 6 Mich. 447.   Neither need we discuss the question whether a husband can maintain this action when, according to his own testimony, his wife still maintains

for him the "love which defies locksmiths." According to defendant's testimony, and other evidence produced in her behalf, plaintiff left the home which defendant had provided for him and his wife without cause, and for the reason that she would not furnish him money as he desired. He wanted her to pay a mortgage upon his father's farm, spend $5,000 for him to buy a place for a conservatory of music, and deposit in the bank $20,000 for his benefit. Under the arguments and methods pursued by counsel for both parties in the court below and in this court, we must dispose of the errors assigned as though the record showed a proper case by a husband for the alienation of his wife's affections, as no request was made to direct a verdict for the defendant.

1. Plaintiff sought to show by the defendant the amount of property, real and personal, left by her husband, and that it had never been divided between her and her daughter. This was properly excluded. Counsel cite no authority to support the proposition. Reason and common sense condemn it. The wife's property is her own. She is under no legal or moral obligation to spend a dollar to support her husband. It is his duty to support her. The ruling was correct upon another ground. If plaintiff sought to recover damages on account of his wife's wealth, he should have declared specially therefor. The law implies no damages in this action on account of the benefit the husband might derive from her property. They should, therefore, have been specially alleged. *Shadock* v. *Plank-Road Co.*, 79 Mich. 7 (44 N. W. 158); *Bateman* v. *Blake*, 81 Mich. 227 (45 N. W. 831).

2. Defendant was permitted to show by disinterested witnesses conversations with plaintiff, prior to his marriage, in which he made inquiries as to the wealth of Miss Whiteley and her mother. This testimony was entirely competent, for it tended to show that his purpose in marrying was mercenary, and not for love. *Derham* v. *Derham*, 125 Mich. 109, 116 (83 N. W. 1005). For the same reason, testimony in regard to his attempts

to obtain money from Mrs. Whiteley after marriage was competent.

3. Defendant offered plaintiff's wife as a witness. To this plaintiff objected. Plaintiff in his testimony had repeatedly stated what his wife had said in the various interviews between plaintiff and his wife and the defendant. Defendant's counsel argued that he had waived the privilege by himself testifying to what his wife had said. The court, however, sustained the objection, and the witness did not testify. The offer of this witness is assigned as error. This contention cannot be maintained upon any theory. The defendant's daughter was a competent witness. He might have waived the privilege. He chose not to. Defendant was not under obligation to ask plaintiff or his counsel privately whether he would consent that his wife might be a witness. Defendant was entitled to make the offer in open court. It was also entirely competent for the jury to know that the plaintiff refused to let his wife testify in regard to the words he had himself placed in her mouth. In *Rice* v. *Rice*, 104 Mich. 371 (62 N. W. 833), the same offer was made in open court, and the same ruling had.

4. Error is assigned upon the instruction, given at the request of the defendant, that the jury must be satisfied, by a preponderance of the evidence, that defendant wrongfully, willfully, and maliciously alienated the affections of her daughter, and upon that portion of the general charge reading as follows:

"The question, therefore, is, Was the mother moved by malice towards plaintiff in what the evidence discloses she did, or was she moved by proper parental motives for the welfare and happiness of her child? In her advice and in her action she may have erred as to the wisest and best course to be taken in dealing with a question so delicate and difficult, but she is entitled to your verdict unless you can say, from the evidence, that she, by her advice, acts, or persuasion, was actuated by malice or bad motives towards plaintiff."

The precise objection made by counsel is that it is appar-

ent that the court used the word "malice" as synonymous
with enmity of heart, malevolence, ill-will, a spirit desiring
harm or misfortune to another, a disposition to injure
others, unprovoked malignity or spite.

"Malice, in a legal sense, means a wrongful act done
intentionally, and without just cause or excuse." *Bell* v.
*Fernald,* 71 Mich. 267 (38 N. W. 910); *Highway Com'rs
of Eagle Township* v. *Ely,* 54 Mich. 173 (19 N. W. 940);
*Long* v. *Tribune Printing Co.,* 107 Mich. 207 (65 N. W.
108). From the oral charge of the court, which is clear
upon all points, it is apparent that the jury could not have
been misled. On the contrary, they were fully informed
as to what conduct on the part of the defendant would
entitle the plaintiff to a verdict. At the very close of the
instructions the court said:

"If the defendant separated the plaintiff from his wife,
did so wrongfully and from bad motives, then the plaintiff
is entitled to a verdict at your hands. * * * The
burden is upon plaintiff to show that the mother did act
from bad motives and with wrongful intent, and that the
mother did thereby separate him from his wife; and, if
the evidence does not satisfy you of that fact, then your
verdict should be for the defendant."

In an action brought by a husband against his father-
in-law for enticing his wife away, decided by the supreme
court of New York in 1809, in which some of the opinions
rendered state that no case of the kind is to be found in
the books, Chief Justice Kent said:

"A father's house is always open to his children; and,
whether they be married or unmarried, it is still to them
a refuge from evil and a consolation in distress. Natural
affection establishes and consecrates this asylum. The
father is under even a legal obligation to maintain his
children and grandchildren, if he be competent, and they
unable to maintain themselves; and, according to Lord
Coke, it is 'nature's profession to assist, maintain, and
console the child.' I should require, therefore, more proof
to sustain the action against the father than against a
stranger. It ought to appear either that he detains the
wife against her will, or that he entices her away from

her husband from improper motives. Bad or unworthy motives cannot be presumed. They ought to be positively shown, or necessarily deduced from the facts and circumstances detailed. This principle appears to me to preserve, in due dependence upon each other, and to maintain in harmony, the equally strong and sacred interests of the parent and the husband. The *quo animo* ought, then, in this case, to have been made the test of inquiry and the rule of decision." *Hutcheson* v. *Peck*, 5 Johns. 196.

I think there is no reason for holding that the jury did not fully understand what the words "malice" and "maliciously," as used by the judge in his instructions, meant. I find no error in the instruction on this point.

5. Error is assigned upon defendant's request No. 4, which was given by the court, in which the court said that the plaintiff must satisfy the jury by a clear preponderance of the evidence. It has been repeatedly held by this court that the law in civil cases does not require a clear preponderance, but only a preponderance. The learned circuit judge evidently understood the law, as is shown by his subsequent general charge. It would be a reflection upon the knowledge of the learned counsel for the defendant to hold that they did not know what the decisions of this court are. The use of the word "clear" was evidently an inexcusable case of carelessness on their part. In request No. 3, immediately preceding this, and which was also given, the law was correctly stated by the use of the word "preponderance." These two requests were, therefore, inconsistent upon this point. We are justified in saying that the inconsistency escaped the attention of the judge. In his general charge he stated positively and unequivocally the correct rule of law. Almost at the very beginning of his general charge he instructed the jury that the plaintiff must satisfy them by a preponderance of evidence. Again:

"If the defendant caused plaintiff's wife to refuse to live with him, and she was actuated by bad motives, then she is to be held liable for the result of such acts."

Again:

"You have the right to consider the acts and conduct of the parties as disclosed by the evidence, and determine the probabilities from the same as to the truth of the issue herein."

Again:

"If the defendant separated the plaintiff from his wife, did so wrongfully and from bad motives, then the plaintiff is entitled to a verdict at your hands."

Again:

"The burden is upon the plaintiff to make out a case as he alleges."

And he closes the charge as above stated, which clearly left the jury to determine the case from the preponderance of the evidence.

It is not only the policy, but the duty, of courts to put an end to expensive litigation, and not to grant new trials where it is evident that an inconsistency in the judge's charge, or even an erroneous charge, has worked no prejudice (*Sloman* v. *Mercantile Credit Guarantee Co.*, 112 Mich. 258 [70 N. W. 886]), or where it is evident that the inconsistency or the error has been corrected in subsequent parts of the instructions (*Maier* v. *Benefit Ass'n*, 107 Mich. 687, 695 [65 N. W. 552]; *O'Donnell* v. *Insurance Co.*, 73 Mich. 1 [41 N. W. 95]). It was clearly intimated in *Hoffman* v. *Loud*, 111 Mich. 156 (69 N. W. 231), that the use by the court of the term "clear preponderance" might not be held to be reversible error, without regard to other portions of the charge. We there said that, taking the instructions as a whole, we thought they were calculated to impress the jury with a view that something more than a preponderance was requisite. Where it appears that, taking the instructions as a whole, they are calculated to impress the jury with a view that only a preponderance is requisite, the judgment should be sustained.

In an action brought by a wife against her father-in-

law for alienating the affections of her husband, the judge said:

"The extent of the injury generally depends upon the previous relations of the parties, and, if these relations were cordial and affectionate, the wrong of one who succeeds in withdrawing the husband's affections from the wife it is impossible almost to adequately measure." *Rath* v. *Rath*, (Neb.) 89 N. W. 612.

The use of this language was condemned by the appellate court, but was held not reversible error, because of the reasonableness of the verdict. I think the language of the court in that case is entirely applicable to this case.

Several other errors are assigned upon the refusals to give plaintiff's requests and upon the oral charge of the court. It is not profitable to discuss them. They are not of importance either to the litigants in this case or to the profession. The instructions of the court fully and carefully covered the law governing the case, and the requests, in so far as they correctly stated the law, were given in the oral charge.

Judgment affirmed.

The other Justices concurred.