### WALTER *v.* WALTER.

1. HUSBAND AND WIFE—ALIENATION OF AFFECTIONS—EVIDENCE.
   It was erroneous, in an action brought by a wife for the alienation of her husband's affections by his parents, to deny to defendants the right to cross-examine her concerning the averments of a bill for divorce which she stated on direct examination that she had filed against the husband.

2. SAME.
   And instructions to the jury that it was the duty of the husband's parents to advise him to live with the wife were prejudicial error.

Error to Wayne; Donovan, J. Submitted June 6, 1912. (Docket No. 27.) Decided October 7, 1912.

Case by Casinova Walter against William Walter and Mary Walter for alienation of the affections of plaintiff's husband. Judgment for plaintiff. Defendants bring error. Reversed.

*Thomas L. Dalton* (*James S. Doyle*, of counsel), for appellants.

*Thomas A. Conlon*, for appellee.

MOORE, C. J. The plaintiff was married to John

Walter in September, 1909. They lived together until about September 1, 1910, when plaintiff filed a bill for divorce against him. She discontinued that proceeding September 17, 1910. In October, 1910, she commenced this suit to recover damages for alienation of affections against the defendants, who are the parents of John Walter. She recovered a judgment for $1,400. The case is brought here by writ of error.

The important questions involved are grouped as follows:

(1) Did the court err in refusing to allow appellants to cross-examine the plaintiff as to the contents of the bill for divorce?

(2) Did the court err in his charge to the jury in his remarks regarding the plaintiff's filing suit for divorce, and as to her reasons for filing and withdrawing same?

(3) Did the court err in making certain remarks to the jury in his charge as to the importance of the family relation?

(4) Did the court err in charging the jury that it was the duty of appellants to advise their son to live with the plaintiff, and in refusing the appellants' fourth request to charge that it was not their duty to so advise their son?

As before stated, the plaintiff, before commencing this suit, commenced a divorce proceeding against her husband. She, on her direct examination, so testified. The defendants attempted to cross-examine her upon that subject, but were not allowed to do so. This action of the court is sought to be justified by the case of *Mead* v. *Randall*, 111 Mich. 268 (69 N. W. 506). A reference to the case will show it to be distinguishable from the instant case. We think the court should have allowed the cross-examination, under *Hitchcock* v. *Moore*, 70 Mich. 112 (37 N. W. 914, 14 Am. St. Rep. 474), and *Derham* v. *Derham*, 125 Mich. 109 (83 N. W. 1005).

The other errors assigned relate to the charge of the court. Among other things stated by the judge in his charge was the following:

"As the Good Book tells us, 'Trouble cometh not from

the dust, neither does sorrow spring out of the ground, but man is born to trouble as the sparks do fly upward.' Trouble came to this family, and whose fault is it, will be a very complicated question for this jury. To have the family united is the greatest problem today. To keep families in peace and harmony together is the greatest problem of our age, and calls for the best judgment in our community. It has been a menace of late, and has been endured of late, as it never has been before in my recollection. In all the cases that have come before me—1,500 at least—this is the second one only of alienation, and the divorce cases we have of late are probably five times in number what they were since I commenced in practice. They have been multiplying, increasing, and the duty of this jury is as high a duty as that performed by the highest court of the world—that is, the Supreme Court of the United States—upon this particular question; for a family united is the foundation generally of the government of civilization. Somebody has said, as between civilization and barbarism, is the difference between the Indian's hut and the ladies' parlor. I ask you to take this case with a good deal of caution and with a good deal of judgment. * * * I charge you that there is a distinction made between a stranger in an action against parents and the husband; that is, there is a difference. A stranger who interferes with married life, and who has no interest in their married life, is on a different footing from the parents, or one of the children in that marriage. I charge you that a father's house is always open to his children, and I might add that the children's house should be always open to the parents, whether married or unmarried. It is as well to them a refuge from evil, and a consolation in distress, and the father is under a legal obligation to maintain his children, and they are under a legal obligation to maintain him, if they are able and he is disabled. And it became the duty of the defendants, the Walters senior, to advise their son to live with plaintiff. They claim they did advise him to live with plaintiff. * * * In a painting I have at home of a lion and a fox, very artistically drawn, in the picture the fox has a cord around the lion's neck, and is leading him against his will, and underneath the sentence, well written, which says: 'This painting must have been drawn by a friend of the fox; had the lion's friend drawn it, the lion

172 MICH.—23.

would surely be leading the fox.' It depends altogether in the case who does the painting, whether it is a friend of the fox or the lion, and you bear that in mind in your judgment of men and affairs; that it has an intense meaning who is drawing the painting. There are certain things that would not make anything of a case for alienation at all. Suppose the senior Walter did strike the mother of the girl who sues; that is not before us; that only shows a little bitterness of feeling. We are not to try out that. This is not an assault and battery case. Suppose a child dies prematurely. Death is something none can foretell or forecast. That may have been a misfortune of nature. Do not be carried away by the evidence of the case, to hunt up something to make a case out of. That might be purely a misfortune. Come to the real merit of the case when you decide it. Come to whether somebody has induced somebody else wrongfully to make a separation, to keep them apart. I do not want to talk too long and prevent a verdict. I think the case has been tried so long that you have about all that you can remember; but I do ask you, gentlemen, because this case touches society, and is a vital point, I do ask you to be just, to be at your best, to use your judgment in a case of this kind; for the influence of a verdict is great in the community. The influence of a verdict touching the family is great in a community. Open no doors that should be closed. Do no injustice when you can do justice."

To say the least, these portions of the charge were unfortunate. That part of the charge in which it is said that it was the duty of the defendants to advise their son to live with the plaintiff is not a correct statement of the law. Some of the principles which should have governed this feature of the case may be found stated in the opinion in *Zimmerman* v. *Whiteley*, 134 Mich. 39 (95 N. W. 989). It is not necessary to discuss the other assignments of error.

Judgment is reversed, and a new trial ordered.

STEERE, MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.