## HENDRICKSON *v.* HARRY.

### On Rehearing.

1. WITNESSES—COMPETENCY—HUSBAND AND WIFE—DIVORCED WIFE — ALIENATION OF AFFECTIONS.

   In an action by a husband for the alienation of his wife's affections, the divorced wife was a competent witness as to acts of physical violence by plaintiff toward her, and her feeling toward, and affection for, him; the action not being instituted in consequence of adultery. 3 Comp. Laws 1915, §§ 12551, 12555.

2. SAME—APPEAL AND ERROR—EVIDENCE.

   In such action, where the trial court, following a colloquy between court and counsel, stated he understood the divorced wife was offered as a witness for the purpose of showing acts of physical violence, and plaintiff's counsel made no suggestion that the court misunderstood the offer, the Supreme Court, on appeal, will regard the incident as an offer made and denied to prove assault upon the wife by plaintiff.

3. SAME—HUSBAND AND WIFE—EVIDENCE—ADMISSIBILITY.

   The divorced wife, being a competent witness, generally, is subject to cross-examination like any other witness, except that she may not testify as to communications between herself and husband during coverture.

4. HUSBAND AND WIFE—ALIENATION OF AFFECTIONS—DAMAGES.

   The mere fact that a husband and wife are not, for a period, on friendly terms, is no excuse for an outsider to interfere in their domestic relations, although the real injury he may do may be less than where happy family relations are destroyed.

Error to Houghton; O'Brien, J. Submitted April 10, 1917. (Docket No. 131.) Decided September 27, 1917. Resubmitted March 5, 1918. Former opinion reversed March 27, 1918.

Case by William Hendrickson against Absalom Harry for the alienation of his wife's affections. Judgment for plaintiff. Defendant brings error. Reversed.

*Galbraith & McCormack* (*J. F. Hambitzer*, of counsel), for appellant.

*Burritt & Burritt*, for appellee.

OSTRANDER, J. In December, 1915, plaintiff's wife filed her bill for a divorce in the circuit court for the county of Houghton, in chancery, and in June, 1916, a decree of divorce was entered in said cause, which recites that it satisfactorily appeared that the material facts charged in the bill were true. Among the facts charged in the bill are the following: Shortly after marriage, the husband began to drink liquors to excess, and in October, 1910, while the parties were living in Superior, Wis., and from then to July, 1911, he on divers days and times beat, struck, kicked, and choked his wife and neglected to furnish her necessary food and clothing. About November 1, 1910, he came home drunk and assaulted his wife; a police officer interfering in his pastime of beating her. On Christmas Eve, 1910, he came home drunk, and assaulted and beat his wife, knocked her down, kicked her, and threatened to kill her. In the spring of 1911, while she was ill and confined to her bed and under care of a physician, he refused to supply fuel for heat, or any provision or sustenance, and she was dependent upon charitable neighbors for food and necessary attention. He gave her a beating July 4, 1911. He was much of the time a loafer, requiring his wife to work as waitress in hotels and restaurants; he using the money she earned for drink. He habitually used in her presence obscene and profane language, and called her vile names. She left him July 5, 1911, going to the home of her parents, where she thereafter resided, and where she was when she filed her bill for divorce. In her bill she describes herself as Senja Hendrickson. She states therein that there has been

no issue as the result of the marriage, and she gives the date of marriage as October 14, 1909.

Plaintiff filed his declaration in the cause at bar November 6, 1914, alleging marriage to Hilma Hendrickson, "his present wife," February 28, 1908; alleging further that he always enjoyed her respect, love, affection, and society until defendant's wrongdoing, which began about August 1, 1913, and consisted of attention, protestation of respect and affection for his wife, and other arts and wiles, had the effect of destroying and alienating the affection which his wife had for him, depriving him of her society, comfort, and aid. The record advises us that upon a trial of the issue joined in this cause a verdict for $1,500 for plaintiff was returned, and that a judgment was entered on the verdict. The errors assigned by defendant are:

"(1) The court erred in permitting the plaintiff to testify, under objection, that he had heard from other people that they had seen Hilma Hendrickson with Harry; it being an indirect way of corroborating plaintiff without legal proof.

"(2) The court erred in that, after Ellen Juntinen testified she had never been in the house of ill fame in Hancock and never had pleaded guilty to being a prostitute, the attorney for the defendant, upon cross-examination of said Ellen Juntinen (formerly Ellen Lake), propounded the following question: 'Did Gust Wickstrom ever take you out of Madge Beital's house in South Range?' To which the attorney for the plaintiff objected, and his objection having been sustained by the court as being incompetent and improper.

"(3) The court erred in not permitting the defendant to show physical acts of violence committed by the plaintiff, against his wife, Hilma Hendrickson, before the commencement of this suit.

"(4) The court erred in holding that the testimony of Hilma Hendrickson showing her state of mind and affection at the time of the beginning of the acts complained of August 1, 1913."

The fourth assignment is without meaning unless words are supplied; the third and first lack precision, although they may be aided by reference to the exception upon which they are based. No comment is made by counsel upon the difference in the dates set up in the bill for divorce, which was received in evidence, from the dates testified to upon the trial, although it is apparent that, if the dates in the bill are correctly given, the wife had separated from her husband some two years before defendant's alleged misconduct began.

1. Plaintiff was testifying, had been cross-examined, and had admitted that he had called his wife a whore. On redirect examination, he said he called her that because "I see her with Harry." He was asked if he had heard from other people that they had seen her with Harry, and answered, "Yes." Objection was made (the question having been answered) that the testimony was incompetent. His counsel suggested that, as affecting plaintiff's conduct, what he had heard was competent, the court said, "Restrict it to that purpose," no other ruling was made, and defendant excepted. As counsel for both sides left the matter at this point, it may be assumed, I think, that the ruling made amounted to this: The testimony was not competent to prove that any one else had seen plaintiff's wife and Harry together; but, plaintiff having been told that others had seen them together, the fact explained plaintiff's conduct towards his wife. If we assume, also, that the jury understood the matter in this way, the ruling, though of doubtful propriety, cannot be treated as reversible error. In the connection in which it was given, the testimony really amounts to nothing.

2. Plaintiff produced as a witness Mrs. Ellen Juntinen, who gave testimony tending to prove that defendant sought to rent of her rooms to be occupied.

by himself and plaintiff's wife two or three nights a week. On cross-examination the witness had said she had been arrested once, with Hendrickson, the case being dismissed, they having been brought to jail Saturday night, where they remained until Monday morning; that she had never pleaded guilty to being a prostitute, but between her first and second marriage she had had a child. She admitted knowing Gust Wickstrom, a night watchman in Hancock. She was asked:

"*Q.* Did Gust Wickstrom ever take you out in Madge Bietila's house in South Range?"

To this the court sustained an objection, and defendant excepted. In argument it is said:

"The testimony has her in company of Hendrickson on different occasions. There is testimony to the effect that she bore a bad reputation, and she gave some damaging testimony to assist Hendrickson, and therefore we contend that it was competent to show, if we could, that she was taken from a house of ill fame and was a prostitute therein, as bearing upon her credibility and also as bearing upon the relations between her and Hendrickson."

That the purpose of the question was the one stated in argument is not made clear by the question. If the declared purpose had been served by an answer, it is not clear that Hendrickson's relations with this woman affected at all the conduct of Hendrickson's wife. How far cross-examination of this nature shall proceed is to be determined by the trial judge in the exercise of judicial discretion, and it is not made to appear that discretion was in this instance abused. The rule was recently restated in *People* v. *Cutler*, 197 Mich. 6.

3. The third assignment of error is made somewhat certain and specific by the exception, from which and the record context it appears that the offer made was

to prove, by the wife, herself, acts of physical violence of the plaintiff, and her state of mind and affection for the plaintiff at the time of the beginning of the alleged wrongs complained about by plaintiff. The testimony was excluded. In this connection attention is called to the language of the offer, or of one offer, to prove which contains the recital that she was shown by the record to be "the divorced wife of the plaintiff." The record shows that the trial began on April 27, 1916, that judgment was rendered April 28, 1916, and that the decree of divorce was made June 8, 1916. The statement of facts made by counsel for appellant gives the date of the divorce as June 8, 1916. It would appear, therefore, that when offered as a witness she was the wife of the plaintiff. Yet counsel for appellant discusses at some length the subject of the effect of divorce upon the competency of husband or wife to testify in relation to confidential communications. The court ought not to be required to discover at its peril, or the peril of litigants, the points presented for decision. I think we must treat the subject as though she was both wife and witness, and, as counsel have done so, we must proceed as though no charge of adultery or criminal conversation was directly or indirectly involved. The statute (3 Comp. Laws, § 10213, 3 Comp. Laws 1915, § 12555) is:

"A husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent, * * * nor shall either, during the marriage or afterwards, without the consent of both, be examined as to any communication made by one to the other during the marriage."

The wife is not a party to this suit; the husband is a party. The offer was to examine her as a witness against him, without his consent. The statute forbids it. Had the marital relation ended when the testi-

mony was proposed, a different question would have been presented. See (the point, however, not appearing to have been raised) *Derham* v. *Derham,* 125 Mich. 109 (83 N. W. 1005). In *People* v. *Marble,* 38 Mich. 117, the marriage relation had ended when the husband gave his testimony. See, generally, *Perry* v. *Lovejoy,* 49 Mich. 529 (14 N. W. 485).

4. What has been said disposes, also, of this point. The judgment is affirmed, with costs to appellee.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.

### ON REHEARING.

OSTRANDER, C. J. This cause was submitted at the April term, 1917. An opinion went down September 27, 1917, which may be found reported *ante,* 42. The judgment was affirmed. The action is for damages for alienating the affections of plaintiff's wife; the recovery was substantial. At the trial the defendant called as a witness Hilma Hendrickson, who was sworn and gave her name. The record shows the following matter:

"*Mr. Burritt:* Now, I desire at this time, if your honor pleases, to make an objection to this witness testifying to any fact or alleged fact, circumstances as it occurred or took place between her and her husband and this defendant during the time they were living together as husband and wife., I call the court's attention to that so that if there should be any inquiry made—

"*The Court:* I think I'll excuse the jury.

"(Jury retired from the court room).

"(Argument on objection by Mr. Galbraith).

"*Mr. Burritt:* The plaintiff objects to the witness, who was the wife of the plaintiff down to the date it appears by the records that the decree of divorce was granted, and objects to her testifying as to any communication made by her to her husband at that time or by her husband to her and base the objection on next to the last subdivision of the statute.

"*The Court:* I will sustain that objection as to the

communications but Mr. Galbraith admits that they are not admissible, but he is going to offer, as I understand it, to show acts of physical violence committed by the husband against the wife before you began your action. What have you to say about that?

"*Mr. Burritt:* I object to it, and I don't see how you can show acts of physical violence. If she is a witness and narrated physical acts she would be prohibited from cross-examination.

"*The Court:* I think I will sustain that.

"*Mr. Galbraith:* I'll make a further offer to show by the witness, Hilma Hendrickson, who is shown by the record to be the divorced wife of the plaintiff, William Hendrickson, her state of mind and affection at the time, planted as the time of the beginning of the wrong complained of, namely, the 1st of August, 1913.

"*Mr. Burritt:* We object to that as incompetent.

"*The Court:* I think I'll sustain that objection. It seems to me that if she testified to her state of mind it would be impossible to make such a cross-examination in fairness to this plaintiff without going into their marriage relations. I think it falls under the same objections, and I will sustain it. I think you have a point there that is certainly worthy of consideration."

It is assigned as error:

"(1) The court erred in permitting the plaintiff to testify, under objection, that he had heard from other people that they had seen Hilma Hendrickson with Harry, it being an indirect way of corroborating plaintiff without legal proof.

"(2) The court erred in that after Ellen Juntinen testified she had never been in the house of ill-fame in Hancock and never had pleaded guilty to being a prostitute, the attorney for the defendant, upon cross-examination of said Ellen Juntinen (formerly Ellen Lake) propounded the following question: Did Gust Wickstrom ever take you out of Madge Beital's house in South Range? To which the attorney for the plaintiff objected, and his objection having been sustained by the court as being incompetent and improper.

"(3) The court erred in not permitting the defend-

ant to show physical acts of violence committed by the plaintiff against his wife, Hilma Hendrickson, before the commencement of this suit.

"(4) The court erred in holding that the testimony of Hilma Hendrickson showing her state of mind and affection at the time of the beginning of the acts complained of August 1st, 1913."

In the former opinion these alleged errors were considered, but upon the record then presented were considered as though the record showed the witness to be the wife of plaintiff at the time she was offered as a witness. Later this court was moved to remand the record and grant a rehearing, the ground being that by inadvertence the record in another divorce suit, begun by another woman named Hendrickson, had been returned with the writ of error instead of the record actually put in evidence. The motion to remand was granted and the record has been amended. The motion for rehearing was granted. The cause is now before us upon the corrected record, which shows that a decree of divorce was signed and filed June 7, 1915, while the trial of the instant cause was begun April 27, 1916.

Upon this record the only question to be determined is whether the testimony of the divorced wife is competent to prove any of the things embraced in the offer made by counsel. In this connection, counsel for appellee say that there was no offer made to prove that plaintiff assaulted his wife or otherwise offered her physical violence, that the suggestion in this behalf came from the court in the colloquy above set out. But it will be noticed that argument preceded the statement made by the court, the details of which argument are not set out, and that at the time it was not suggested by counsel for appellee that the court misunderstood the offer or that no such offer had been made. On the contrary, counsel for appellee made

200—Mich.—4.

objection as to a specific offer to the competency of the witness and his objection was sustained by the court. Under the circumstances this court will regard the offer as made and denied.

The applicable statutes in force when the cause was tried, 3 Comp. Laws 1915, §§ 12551, 12555, read as follows:

"(12551) SEC. 63. No person shall be excluded from giving evidence in any matter, civil or criminal, by reason of crime or for any interest of such person in the matter, suit, or proceeding in question, or in the event of such matter, suit or proceeding, in which such testimony may be offered, or by reason of marital or other relationship to any party thereto; but such interest, relationship, or conviction of crime, may be shown for the purpose of drawing in question the credibility of such witness, except as is hereinafter provided."

"(12555) SEC. 67. A husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent, except in suits for divorce and in cases of prosecution for bigamy, and where the cause of action grows out of a personal wrong or injury done by one to the other, or grows out of the refusal or neglect to furnish the wife or children with suitable support, and except in cases of desertion or abandonment, and cases arising under act one hundred thirty-six of the Public Acts of nineteen hundred five, relating to marriage, and cases where the husband or wife shall be a party to the record in a suit, action, or proceeding, where the title to the separate property of the husband or wife so called or offered as a witness, or where the title to property derived from, through or under the husband or wife so called or offered as a witness, shall be the subject matter in controversy or litigation in such suit, action or proceeding, in opposition to the claim or interest of the other of said married persons, who is a party to the record in such suit, action or proceeding; and in all such cases, such husband or wife who makes such claim of title, or under or from whom such title is derived, shall be as competent to testify in relation

to said separate property and the title thereto without the consent of said husband or wife, who is a party to the record in such suit, action or proceeding, as though such marriage relation did not exist; nor shall either, during the marriage or afterwards, without the consent of both, be examined as to any communication made by one to the other during the marriage, but in any action or proceeding instituted by the husband or wife, in consequence of adultery, the husband and wife shall not be competent to testify."

According to the letter of the law the witness Hilma Hendrickson was a competent witness for the defendant except that she could not testify to communications made by herself to her husband and by him to her during their marriage, this action being treated by counsel for both parties as not being one instituted in consequence of adultery. It is said for plaintiff, appellee, that if she is permitted to answer as to her feeling towards and affection for him, the real reason for her state of mind at the time must be developed by cross-examination, which it is obvious cannot be conducted without inquiry into the domestic relations; that

"Had she been permitted to testify that at said time she had lost her affection for her husband, the question would at once arise as to why she had lost her affection for him. Had she been permitted to testify that she lost her affection for her husband on account of his acts of physical violence against her, the cause of such acts of physical violence would necessarily have to be inquired into. In any event, it would be impossible to cross-examine the witness so as to show the real reason for her loss of affection for the plaintiff, without going into their marriage relation."

It must be held that the divorced wife was a competent witness, generally, for the defendant—and for that matter for the plaintiff—and it appearing that no objection was made that the offer to prove was too broad, no suggestion made that it should be more

specific, it is held that the court should have permitted the examination to proceed until testimony was called for which she was not competent to give. What questions may be asked her cannot be anticipated, nor can this court upon this record lay down any rules for the trial court beyond the one above stated. The witness will be subject to cross-examination like any other witness, and her credibility and the weight of her testimony will be for the jury.

It is to be remembered, too, that the mere fact that a husband and wife are not for a period on friendly terms does not furnish an excuse for the interference into the domestic relation of an outsider, although the real injury he may do may be less than when a tranquil, happy family life is destroyed.

The judgment is reversed, with costs to appellant.

BIRD, MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.