DEAN v. MILLARD.

HIGHWAYS—IMPROVEMENT—DITCHES—INJURY TO LANDOWNER.
    Highway officers will not be enjoined from carrying into execution a good-faith plan of improving a highway by avoiding carrying surface water across the roadway and back by digging a ditch alongside the way, though such course incidentally damages complainant by making access to his land from the highway more difficult, and benefits his neighbor across the way by diverting the water that would otherwise be precipitated upon his land; complainant not being entitled to base right to relief upon his neighbor's advantage, and his own injury being damnum absque injuria.

Appeal from Ottawa; Padgham, J.  Submitted January 23, 1908.  (Docket No. 144.)  Decided March 17, 1908.

Bill by John Dean and Thomas Dean against Charles Millard, highway commissioner, to enjoin the construction of a ditch.  From a decree dismissing the bill, complainants appeal.  Affirmed.

*Walter I. Lillie,* for complainants.

*George A. Farr,* for defendant.

CARPENTER, J.   Complainants own a farm situated on the north side of an east and west highway in the township of Tallmadge, Ottawa county, in this State.   A few rods west of the west line of complainants' farm, said east and west highway ascends a hill 75 feet in height.   In the state of nature the surplus surface water flowed from said hill along the north side of said highway into a gully on complainants' farm.   There it mingled with other surplus surface water coming from complainants' farm, and flowed southward across the line of said highway — through a culvert placed under the roadbed — onto the land of one Friar, whose farm is on the south side of said highway opposite to that of complainants; thence it passed easterly, and then it went back across the highway through a culvert situated east of the eastern line of complainants' farm, and from there it found its way to a natural stream called Sand Creek.   It was found that in times of heavy rains or freshets the water coming down said hill brought with it such quantities of sand, clay, and gravel that the culvert situated between the farm of complainants and Friar was frequently filled up and clogged, and the water, instead of running across the highway, backed up and damaged the roadbed. In consequence of this the highway was sometimes impassable at that point.   The highway authorities decided to remedy the trouble by keeping this water on the north side of the roadbed until it reached a point beyond the east line of complainants' farm.   They therefore planned and undertook to dig a ditch parallel with and close to the north side of the roadbed from the top of the hill to the eastern culvert.   Said ditch was quite shallow at the top of the hill, but was of considerable depth in front of complainants' farm.   A similar ditch on the south side of said roadbed was also planned.   It was also the intention of the public authorities to construct a crossing whereby

complainants might drive over said ditch and thus obtain access to their land. After this plan had been made and nearly executed complainants filed this bill for the purpose of enjoining the taking of further steps towards its execution. The suit was heard in the circuit court, and a decree entered dismissing complainants' bill. Complainants appeal to this court.

It will be observed that, in consequence of the plan of improvement adopted by the highway authorities, complainants will suffer an inconvenience, while their neighbor Friar will secure an advantage. The inconvenience to the complainants is that a deep ditch will separate their farm from the adjacent roadbed on the south. The advantage to Friar is that the surface water coming from the north of the highway will no longer be precipitated on his farm.

If the improvement of the highway was a mere pretence; if the real object of the highway authorities was to procure an advantage to Friar at the expense of complainants, we should by no means declare that relief should be denied. But that was not their object. The testimony convinces us, as it convinced the trial judge, that the improvement of the highway was their actual object; that they adopted this plan of improving the highway in good faith and not for the purpose of annoying complainants, nor for the purpose of affording profit to their neighbor. Moreover, their plan would seem to be one calculated to effect the object for which it was adopted.

Complainants cannot base their right to relief upon the ground that the water was diverted from flowing on their neighbor's land, unless that diversion affected their right. Their right to relief must depend upon their injury. It cannot depend upon their neighbor's advantage. The cases of *Smith* v. *Township of Eaton*, 138 Mich. 511, and *Elliott* v. *Carter*, 140 Mich. 303, where we denied the right of authorities improving a highway to turn water from its natural course on the land of another are relied upon by complainants. They have no application.

There the improvements cast the surface water upon complainant's land. No such result is brought about in this case. In those cases we did not hold that after surface water leaves one's land he has a legal right to have it flow in its accustomed channel. He has no such right unless its diversion injuriously affects him. The determining question then is this: Will the execution of the plan work a legal injury to complainants? The sole injury they will sustain is that the ditch dug between their farm and the roadbed will inconvenience their access to the farm. Have the highway authorities then a legal right, in making highway improvements, to make a ditch alongside the roadbed which will render less convenient access to the highway by the adjacant owner? This is not a new question in this State. It has already been decided, and decided adversely to complainants' contention. In *Highway Com'rs of Eagle Township* v. *Ely*, 54 Mich. 177, this court in a similar case said:

"If, therefore, in this case the ditch in question was such an ordinary ditch as the good of the road should dictate; if the sole end of constructing it was to improve the road and the consequent benefit to the public; and if in carrying out this object it became either necessary or expedient to dig the ditch in front of the defendant's premises and past his gateway, the commissioner, or overseer acting under his directions, had a right to do it; and if in the execution of this power, which was entirely in their discretion, they dug the ditch to such depth and width as to render it impassable for teams or vehicles going in or out of defendant's fields, they would incur no liability to defendant. It would be the performance of a public duty and the exercise of lawful authority, from which, if defendant suffered injury, it would be damnum absque injuria. There is no liability for doing an act which is either directed or authorized by a valid statute, if performed with reasonable care and skill. There is no law which requires the township authorities, in making or repairing roads, to construct proper or convenient passageways to enable an adjoining landowner to reach the traveled part of the highway. If in filling up the low places or in cutting down the hills to improve the public

roads an adjoining landowner is inconvenienced, or his land made more difficult of access, it is an inconvenience or loss which he sustains for the public benefit."

The decree must be affirmed.

GRANT, C. J., and MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.